[S. F. No. 14898. In Bank.—October 20, 1933.]

## C. E. PETERS, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

C. E. Peters, *in pro. per.,* for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—This is a petition to review and annul the recommendation of the Board of Governors of The State Bar that the petitioner be suspended from the practice of law for a period of three months.

The petitioner was charged by a notice to show cause with violations of the provisions of subdivision 2 of section 282 of the Code of Civil Procedure. That subsection provides that it shall be the duty of an attorney to maintain

the respect due to the courts of justice and to judicial officers. Section 287 (2) of the same code specifies as a cause of removal or suspension a violation by an attorney of his duties as such. There is also involved the alleged violation by the petitioner of his oath "to faithfully discharge the duties of an attorney and counsellor at law to the best of his knowledge and ability" (sec. 278, Code Civ. Proc.), including also the duty to abstain from all offensive personality (sec. 282 (6), Code Civ. Proc.).

The petitioner as attorney represented Mrs. Edna Gertrude Sullivan, a devisee under the will of George A. Gamache, deceased. Proceedings for the probate of the will were pending in the Superior Court of Alameda County. The Bank of Italy was the executor of the will. The testator devised to Mrs. Sullivan a lot of land in Alameda County. At the time of the purchase of the lot by the decedent it was encumbered by a deed of trust securing a promissory note of the testator's grantor in the sum of about $2,200, which at the decease of the testator had not been discharged. The purpose of the petitioner's employment by Mrs. Sullivan was to secure distribution to her of said property free of the encumbrance of the deed of trust.

On October 31, 1929, the attorney filed Mrs. Sullivan's petition seeking to have the existing debt paid and discharged from the residue of the estate. On the hearing before the Honorable Lincoln S. Church, presiding in the probate department, the petition was denied on November 19, 1929. On December 7th the attorney filed a notice of intention to move for a new trial. On January 14, 1930, the former order was set aside by stipulation. Subsequently the issues were decided by Judge Church adversely to the petitioner's contentions.

Thereafter and in June, 1930, the petitioner on behalf of his client filed a petition for partial distribution of the devised property free and clear of the existing encumbrance. Objections were filed by the executor. Before this matter could be heard by Judge Church and on September 10, 1930, the petitioner filed an affidavit seeking to disqualify Judge Church on the ground of bias and prejudice. The attorney recited in his affidavit that upon the former hearing before Judge Church the petitioner had asked that the deed of trust involved be returned to the files of the court as an exhibit.

He then states that Judge Church "had the effrontery to ask affiant to make a copy in the recorder's office", and that when Mrs. Sullivan was on the stand, "Judge Church, instead of listening to her, held up the deed of trust in his hands very conspicuously, turned it around by the corners, and in a very ostentatious, very child-like, and very foolish manner, pretended to be reading the deed of trust with great interest; at the same time rolling his eyes from side to side and around like a boy in school pretending to study his lesson". In the same affidavit the attorney also stated that "it is common knowledge" that M. C. Chapman of the firm of Chapman & Trefethen, representing the owner of the trust deed, "is presumed to have undue influence with Judge Church", and that "Judge Church has placed himself under political obligation to said M. C. Chapman recently". He concluded with a request to the Judicial Council to name a judge, "if possible, who is not tainted with Transamerica or Bank of Italy stock".

The charges of bias and prejudice were tried before another judge, who found Judge Church not disqualified. At the request of Judge Church that the hearing on the petition for partial distribution be assigned to another department, the matter was transferred to Judge Stanley Murray, a superior judge of Madera County then sitting in Alameda County pursuant to an order of the Judicial Council. On the subsequent hearing Judge Murray announced his ruling that the petition for partial distribution was granted, but subject to the subsisting encumbrance on the ground that the question involved was previously decided and was *res adjudicata*. Later during the same morning Judge Murray reopened the matter to be continued to the following day to take evidence as to distribution. Before that hearing, however, the petitioner on October 27, 1930, filed an affidavit seeking to disqualify Judge Murray. In this affidavit it is stated that Judge Murray, "wilfully and in wanton disregard of plaintiff's rights" and "in wilful and wanton violation of his oath of office as a judge" decided "plaintiff's position without one iota of evidence"; that it "would be highly dangerous and improper and a travesty on justice to allow or permit Judge Murray to hear or act upon the petition"; and that the affiant had "importuned and tried to persuade Judge Murray to hear the case in a manner be-

fitting a court of justice, and Judge Murray wilfully and wrongfully declined to hear evidence".

This charge of disqualification was heard before Judge T. W. Harris, who found Judge Murray not disqualified. By stipulation and at the suggestion of Judge Harris the matter of the hearing on the petition for partial distribution was transferred to Judge E. C. Robinson. The latter, on March 4, 1931, decreed partial distribution of the estate and entered an order that the property devised to Mrs. Sullivan be distributed to her subject to the deed of trust.

The petitioner then, on March 30, 1931, filed in the matter of the estate a, paper sworn to by him entitled "An affidavit in the matter of notice of petitioner's intention to move for a new trial upon decree of partial distribution dated and filed March 4, 1931." This affidavit contained a charge that Judge Harris, when he heard the disqualification charges directed against Judge Murray and when he transferred the case to Judge Robinson, was disqualified on the ground that at that time he was a member of the advisory board of Bank of America. Therein the attorney characterized the various rulings as "judicial oppression and misconduct of the most amazing character, thus depriving a weak and helpless citizen of her right to impartiality and justice"; alluded to Judge Murray as a "peripatetic" judge, and ended that, in the affiant's opinion, "it was not done of a good conscience".

The motion for a new trial was denied. Thereafter the executor filed its final account and petition for final distribution. On February 2, 1932, the petitioner filed his client's objections to the final account, together with a petition to set aside and vacate the former orders, judgments and decrees of the court in the pending probate proceedings on the ground that the same were obtained by fraud. All of the foregoing charges made by the petitioner in respect to said several disqualification proceedings and motions are repeated in much the same vein, with the difference that "in order to preserve the respect due to the superior court" the attorney "was obliged to designate" said four judges as "X, J, K and L". Said four judges were accused of individually and separately being negligent and careless in performing their duties "to such an extent that

such acts constituted a wilful and unjust deprivation of petitioner's rights".

The attorney filed written points and authorities in opposition to the executor's demurrer and motion to strike. From this the following is quoted: "There is so much law to refute the executor's points and authorities, so laboriously worked out, to try to bolster up a wretchedly degraded piece of business that the executor and his crew has been trying to put over, that we cannot quote all of it. . . . The foregoing is a DELIBERATE ATTEMPT TO MISLEAD THE COURT. Only another example of what the unscrupulous gentleman who appears in court for the executor will do to attempt to bolster up a bad case and defeat justice. . . . The judge who influenced a stipulation that the case go before Judge Robinson . . . should be as anxious as anybody to undo the wrong. The most that can be said in his favor is that . . . he forgot that he was a member of the local advisory board of the Bank of America, Bank of Italy, etc. Why, of course, what good would it do to bring such matter to the attention of a judge of his own choosing. Banks acting as executors might nearly always have their own way, if they could get matters before judges chosen by their own agents and pseudo-officers."

Upon the first hearing before the local administrative committee of Alameda the petitioner moved that the proceeding be transferred to a local administrative committee of another county because of his belief that he could not have a fair and impartial trial before said committee. The petitioner filed his affidavit based on said grounds and the members of the committee filed counter-affidavits. The motion for transfer was referred by that committee to the Board of Governors. The latter appointed local administrative committee No. 3 of San Francisco as a special local administrative committee for Alameda County for the purpose of hearing and reporting to the Board of Governors upon the present charges. The latter committee conducted the hearings. It recommended the suspension of the petitioner for a period of one year, which the board reduced to three months.

The petitioner is a native of Nevada and now nearly sixty-two years of age. He was admitted to practice law in this state in 1898. His registration card shows that he was

also admitted to practice in the state of Nevada, and that he was district attorney of Eldorado County in 1903–1906. He testified that for several years prior to 1923 he lived in San Francisco and that in 1923 he removed to Alameda County and for about two years worked for title companies. It appears in the record from the petitioner's oral testimony that prior to the filing of the first affidavit herein mentioned, but subsequent to said adverse rulings of Judge Church, the petitioner entered his opposition to Judge Church in the election contest for the office of superior judge of Alameda County. The petitioner admits that the only basis for his statement that Judge Church was under political obligation to M. C. Chapman was the fact that the latter had been the first to sign as one of Judge Church's sponsors in that election. It appears that the petitioner also opposed Judge Harris in another election.

█ The petitioner makes numerous contentions in his briefs filed in support of his petition, almost none of which, however, has any relevancy to questions which may be the appropriate subjects of investigation or review on this proceeding. The petitioner has made no showing that the findings and decision of the board are unlawful or erroneous. (Sec. 26, State Bar Act, Stats. 1927, chap. 34.)

The petitioner's testimony of the judges' demeanor and the events occurring in the courtroom was contradicted. No evidence tending to prove the truth of the petitioner's statements bearing on the issue of bias and prejudice, the accusations of political influence and the like, was offered. On the contrary, it may be said that the record shows affirmatively that all such statements were false, and if not made deliberately with a consciousness of their falsity, that they were made with at least a conscious carelessness as to their truth or falsity so as to present an equally grave and unfortunate situation. That this attitude and state of mind of the petitioner existed and has continued even up to the present time is further borne out by his conduct on the hearing and his arguments on this proceeding. Without noting further specific instances we may say that the record fully supports the committee's comments and conclusions that "There is no retraction, nor apology, no excuse as to what was said and done. The transcript of 170 pages following a considerable period of possible retrospection offers no glimmer from re-

spondent of possible regret or palliation. . . . There is nothing in the record which permits us to overlook or condone respondent's attack on the dignity of the courts." Indeed, we may add that it is a sad commentary on the state of the record that it discloses a pertinent application for and evident truth of the petitioner's statement included in his closing brief that if the lodgment of the complaint in this proceeding "was designed to suppress me, it failed".

The petitioner relies on the case of *Works* v. *Superior Court,* 130 Cal. 304 [62 Pac. 507], in complete justification of his conduct in pursuit of his right to make a showing in proceedings under section 170 of the Code of Civil Procedure, relating to the disqualification of judges. Many other statements contained in the affidavits and papers filed by the petitioner in the probate proceedings, which at first blush appear gratuitously offensive, were not alluded to by the committee in its findings, apparently for the reason that the statements were considered material to the alleged grounds of the charges of disqualification and were therefore apparently within the attorney's rights as defined by the case relied upon. But the opinion in that case also declares that an attorney may not go "out of his way to introduce something purposely and gratuitously offensive". (*Works* v. *Superior Court, supra,* p. 307.) That the attorney's statements quoted herein fall within the prohibition cannot successfully be controverted on this record. That they are offensive can admit of no doubt. The gratuitous character of some is established by the lack of any materiality to the issues involved; that of others by the failure of even a shadow of proof to support them. This situation, in addition to what has already been said, sufficiently supports a conclusion that offense was intended.

The petitioner, relying on section 34 of the State Bar Act, makes the objection that any jurisdiction herein of the board or of the court is lacking because the hearings before the committee whose findings the board adopted where held in San Francisco, when Alameda County was the only proper county wherein the hearings could be conducted. Section 34 of the act provides that the hearings shall be held either in the county where the attorney maintains his principal office as such, or where he resides, or where the offense is committed. It may be conceded that under this

provision the petitioner could not be compelled against his objection to attend hearings except in Alameda County. The petitioner does not question the power of the board to appoint a special local administrative committee for Alameda County (sec. 30, State Bar Act, *supra*), nor that that committee had full power or jurisdiction to conduct hearings and compel the attorney's attendance thereon. We may, therefore, properly dispose of this contention by concluding that the provision was not intended to affect any question of jurisdiction, but was intended solely for the benefit of the attorney charged, and that it is a benefit which the attorney may waive. The petitioner without objection submitted to having the hearings conducted in San Francisco. He may not, therefore, be heard to make the objection on this proceeding.

The record shows affirmatively that the petitioner has had a full and fair hearing on the charges involved and that no opportunity to present any matter essential to the preservation of his rights was denied him.

It is ordered that the petitioner be suspended from the practice of the law in this state for a period of three months from and after thirty days after the filing of this order.