## LAUGHLIN v. EICHER.

Misc. No. 71.

United States Court of Appeals
District of Columbia.

Decided Nov. 13, 1944.

Mr. James J. Laughlin, of Washington, D. C., petitioner, pro se.

Mr. O. John Rogge and Mr. Joseph W. Burns, Special Assistants to the Attorney General, and Mr. Philip R. Miller, Special Attorney, Department of Justice, of Washington, D. C., for respondent.

Before GRONER, Chief Justice, and STEPHENS, MILLER, EDGERTON, and ARNOLD, Associate Justices.

EDGERTON, Associate Justice.

This is a petition for a writ of mandamus to reinstate counsel in a trial. James J. Laughlin, the petitioner, is a member of the bar. Edward C. Eicher, the respondent, is Chief Justice of the District Court of the United States for the District of Columbia and is presiding in United States v. McWilliams et al., D.C., 54 F.Supp. 791, commonly called the sedition trial.

Until July 5, 1944, petitioner represented two of the defendants in that trial. On that day, respondent called upon the attorneys who were concerned in the matter to "explain or justify or make such showing as they see fit with regard to" the formation by them of a certain "club, as they see fit to call it," which seemed "prima facie at least" to show contempt of the court. One attorney, Mr. Koehne, volunteered the irrelevant information that he had learned from a newspaper that petitioner had filed with the Speaker of the House of Representatives a petition for respondent's impeachment. Mr. Koehne then read an "opposition" which he had filed, in which he stated that the impeachment petition insofar as it related to the pending trial was meritless, not in good faith, and filed for the purpose of hindering the administration of justice. Respondent made no comment and called upon other attorneys. One of them, Mr. Dilling, assumed responsibility for the "club" and its badges and assured the court that no contempt was intended. Respondent called another name and then petitioner's.

Petitioner did not confine himself to the matter of the club. He did not even mention it specifically. After asserting generally that "there never was any attempt to be in contempt of court" and that he was "honestly and diligently trying to do [his] duty," he proceeded to attack respondent's conduct as a judge and to defend the impeachment petition. He said: "We have felt you have stripped from us, by your attitude on the bench, . . . the right to represent our defendants in accordance with the constitutional provision. They are guaranteed a fair and impartial trial . . . It would seem strange that in just one trial so many attorneys would go so far astray as to incur the displeasure of your Honor . . . If we feel that your Honor is favoring the Government, that is, time after time, you grant every whim and every wish of theirs and at the same time deny the same request

that we make, then, of course, we would be less than men if we did not in an orderly and legal way bring that to your Honor's attention. Of course, there is the duty on all of us to maintain respect of the courts . . . If our courts fail, what have we left? We know in the last ten years many things have happened that [have] shaken the confidence of the people of the United States to the very foundation. Take, in the case of Judge Manton, who was sent to the United States Penitentiary . . . I say there is a duty on the part of all of us to maintain but, by the same token, the courts must merit that respect and must merit that confidence. I say that certainly all the vice cannot be on one side and all the virtue on the other side.

"That would suffice if your Honor did not permit another attorney, Mr. Koehne, to make certain statements which I cannot, as a matter of personal honor, permit to go unchallenged. I want to say this: It is true that there was an impeachment filed with the Speaker of the House of Representatives. I submit any citizen of the United States, if he is aggrieved has the right to petition for an impeachment of a public officer . . . So, availing myself when this thing went on day after day and week after [week] . . ., I felt it was high time that we could appeal to the only tribunal that could take care of such a situation as this, and there was an impeachment filed with the Speaker of the House of Representatives . . . Since you have permitted Mr. Koehne to read a certain portion of the petition for impeachment, I think I ought to have a right to refer to the impeachment itself. It is headed: 'Petition for Impeachment of Edward C. Eicher, Chief Justice of the District Court of the United States for the District of Columbia.'"

At this point respondent said: "By the way, Mr. Laughlin, that has nothing to do with the subject matter that the court suggested for discussion this afternoon. The Court had no information as to what Mr. Koehne's remarks were going to be. He was given the privilege to speak in his own defense in regard to the matter that the Court suggested." In regard to that matter, i.e., the so-called club, respondent subsequently said: "The Court is quite happy to accept Mr. Dilling's explanation of the matter and to end the incident in this court."

The following colloquy then occurred:

"The Court. Now, that brings the Court to another matter the Court feels should be explored and determined before the jury returns tomorrow morning, and that is *the matter arising in connection with* [1] the petition for impeachment of this Court filed by one of counsel in the case, Mr. Laughlin, with the Speaker of the House of Representatives.

"At this point, the Court offers for the record, a copy of said petition for impeachment, and the Court now calls upon Mr. Laughlin in open court to show cause why he should not be dismissed from further participation in this case as counsel for either of the two defendants heretofore represented by him in the case, and denied further participation in this trial as counsel for the defendant[s].

"Mr. Laughlin, you may be heard.

"Mr. Laughlin. I submit your Honor has no power to call upon me. Any citizen of the United States has a right to petition Congress for the impeachment of any officer of the United States. I exercised the constitutional right given me, and filed with the Speaker of the House, and I am prepared, when the appropriate committee of Congress calls upon me—I have asked that committee—or I have suggested to the Speaker in the petition that it make request of the Department of Justice for the transcript of proceedings in this case so that they can deal more intelligently with the subject matter of the petition. So, I say your Honor is without power at this stage to take any notice. You would be usurping the function of another branch of the Government. That is beyond your power.

"The Court. Is that all you have to say?

"Mr. Laughlin. That is all I have to say.

"The Court. Very well.

"It is the order of this court, Mr. Laughlin, that you are dismissed from this court as an attorney of record for either Mr. Smythe or Mr. Noble, or for any other of the defendants for whom you have heretofore appeared as associate counsel; that you be denied further participation in this case or in the trial of it; that you are ordered to turn over to and to surrender to your successor counsel all papers, documents or matters of evidence in any way affecting the defense of the defendants that you have heretofore represented."

---

[1] Emphasis supplied.

Petitioner took exception to respondent's order, left the courtroom, returned next day, was expelled, and applied to this court for a writ of mandamus to require respondent to reinstate him as one of counsel in the trial. By an equal division of its then sitting members, this court denied the writ and afterwards denied a petition for rehearing. Petitioner then moved for leave to file a second petition for a writ of mandamus. We now grant leave to file but deny the petition for the writ.

■ The petition to the House of Representatives for respondent's impeachment, which petitioner publicly filed while the trial was pending, is in the record. It contains highly derogatory assertions, some of them fantastic, regarding respondent's alleged relation to the trial and his alleged conduct of the trial, and is in effect a public profession of contempt for respondent's character. An attorney who publishes such a document during the trial to which it relates should ask to be excused from the trial. His further participation would be useful neither to his client nor to the court and would seriously embarrass counsel, court, and defendants. It is immaterial in this connection whether petitioner's publication is protected by the rights of petition and of free speech or is a criminal attempt to obstruct justice, for his continued participation in the trial would be equally harmful in either case.

■ Petitioner did not stop with publicly filing the petition for impeachment. He voluntarily stated in open court that he had filed it. By clear implication he asserted in open court that its charges were true. In open court he accused the respondent of gross and habitual misconduct in the trial. He invited respondent to consider the crime and punishment of Judge Manton. All this had not even the excuse of relevance to any motion or matter before the court. All this was contempt in the court's presence.

■ Respondent might, of course, have punished petitioner for this contempt. But petitioner had already been punished twice, once by respondent and once by another judge, for contemptuous conduct in this trial. Respondent turned from punishment to prevention. He might have instituted proceedings for petitioner's disbarment or suspension from practice. He chose a more lenient [2] and more promptly effective course. He exercised only the elementary right of a court to protect its pending proceedings, which includes the right to dismiss from them an attorney who cannot or will not take part in them with a reasonable degree of propriety.[3]

Petitioner's attack upon the order of dismissal rests upon all of the following assumptions, each of which we think erroneous:

(1) That it was possible, as a mental operation, to dissociate Laughlin the attorney who filed the impeachment petition from Laughlin the attorney who in open court acknowledged and defended its filing and at the same time attacked respondent's character, and who had previously committed other contempts during the trial.

(2) That respondent elected to make that abstraction and to be uninfluenced, in deciding to dismiss petitioner from the trial, by petitioner's misconduct in the trial itself. Such a course, if at all possible, would be illogical and unlikely. We find in the entire transcript no evidence that respondent took that course or tried to take it. He gave no reason for his order of dismissal. It is evident that he was largely influenced *either* by the filing of the impeachment petition or by petitioner's defense of it in court or both. There is nothing to show that he was not influenced, as we think any judge must have been in-

---

[2] In Brown v. Miller, 52 App.D.C. 330, 333, 286 F. 994, 997, which sustained the trial court's dismissal of an attorney from a particular trial because of his previous employment by his client's opponent, this court said: "One contention made by appellant is that this proceeding is in the nature of a disbarment, and should, if at all, have been instituted and prosecuted as such. The rules of court upon which appellant relies provide for disbarment proceedings, but expressly state that the provisions thereof shall not deprive the court of any further power in the premises which it may possess, and the statutes cited by appellant in this connection are equally elastic. We find therein no prohibition expressed or implied against a proceeding of this character. It would indeed be singular, in a case like this, to hold that the proceedings below must come to naught because of a character more favorable to the appellant than might have been invoked against him."

[3] Brown v. Miller, supra; Kelley v. Boettcher, 8 Cir., 82 F. 794, Brewer, Sanborn and Thayer, JJ.; State v. Crum, 7 N.D. 299, 74 N.W. 992.

fluenced, by petitioner's other misconduct in the trial.

(3) That petitioner's public attack upon respondent in the impeachment petition, pending the trial, was not a valid reason for dismissing him from the trial. We think that attack, in itself, made it so improper for petitioner to remain in the trial that it would have justified his dismissal.

■ (4) That respondent's supposed selection of a supposed invalid reason for his order would vitiate the order. The law is to the contrary. Appellate courts sustain judgments which they think were right for other reasons than those which trial courts gave.

Petition for writ of mandamus denied.

STEPHENS, Associate Justice (dissenting).

This is the third occasion on which this matter has been presented to the court. On the first, July 5, 1944, immediately after the making of the order complained of, the petitioner filed a petition for a writ of mandamus making therein in substance and effect the same allegations as are contained in the present petition, and praying for substantially the same relief. Judge Miller was then absent from the jurisdiction and there were, therefore, but four judges in attendance upon the court. They were equally divided in opinion as to the merits of the petition. The practice of the court requires application for leave to file a petition for a writ of mandamus; accordingly the petition was considered as an application for leave and leave was denied. Thereafter the petitioner applied for a rehearing and this application was denied, again because of the same division among the same four judges. The present petition has been submitted to the full court.[1] Judge Groner and I were, on the first two occasions referred to, of the opinion that the petition stated a cause of action for relief. It may well be that in the lapse of time since the filing of the original petition conditions and circumstances have arisen which would make useless present granting of the relief sought. But, in view of the principle involved, I deem it proper to set out the reasons impelling my first conclusion which, from a strictly legal point of view, apply equally in respect of the present petition.

The material allegations of the petition reduce themselves to the following: The petitioner is a member of the bar of the District Court of the United States for the District of Columbia, and as such was engaged to represent certain defendants in criminal case No. 73086, United States v. McWilliams et al., in the District Court, which case now is, and at all times referred to in the petition was, on trial in said court. Several defendants in the criminal case are desirous of engaging the petitioner's services for their defense therein. The petitioner, as counsel for two of the defendants, to wit, Robert Noble and Edward James Smythe, appeared in the criminal case from April 17, 1944, until July 5, 1944. On the latter date, while the petitioner was representing these two defendants, the following occurred as shown by the transcript of proceedings in the District Court:

"[The Court:] Now, that brings the Court to another matter the Court feels should be explored and determined before the jury returns tomorrow morning, and that is the matter arising in connection with the petition for impeachment of this Court filed by one of counsel in the case, Mr. Laughlin, with the Speaker of the House of Representatives.

"At this point, the Court offers for the record, a copy of said petition for impeachment, and the Court now calls upon Mr. Laughlin in open court to show cause why he should not be dismissed from further participation in this case as counsel for either of the two defendants heretofore represented by him in the case, and denied further participation in this trial as counsel for the defendant[s].

"[Here followed a copy of the petition for impeachment.]

"The Court: Mr. Laughlin, you may be heard.

"Mr. Laughlin: I submit your Honor has no power to call upon me. Any citizen of the United States has a right to petition Congress for the impeachment of any officer of the United States. I exercised the constitutional right given me, and filed with the Speaker of the House, and I am prepared, when the appropriate committee of Congress calls upon me—I have asked that committee—or I have suggested to the Speaker in the petition that it make request

[1] The full complement of the court is six, but a vacancy due to the resignation of Associate Justice Fred M. Vinson on May 28, 1943, remains unfilled.

of the Department of Justice for the transcript of proceedings in this case so that they can deal more intelligently with the subject matter of the petition. So, I say your Honor is without power at this stage to take any notice. You would be usurping the function of another branch of the Government. That is beyond your power.

"The Court: Is that all you have to say?

"Mr. Laughlin: That is all I have to say.

"The Court: Very well.

"It is the order of this court, Mr. Laughlin, that you are dismissed from this court as an attorney of record for either Mr. Smythe or Mr. Noble, or for any other of the defendants for whom you have heretofore appeared as associate counsel; that you be denied further participation in this case or in the trial of it; that you are ordered to turn over to and to surrender to your successor counsel all papers, documents or matters of evidence in any way affecting the defense of the defendants that you have heretofore represented.

"That is the order of the Court, Mr. Laughlin.

"Mr. Laughlin: I take exception.

"The Court: Exception may be noted.

"Mr. Laughlin: And will ask the Court of Appeals to review it speedily.

"The Court: Exception may be noted."

On the morning of July 6, 1944, the petitioner appeared in the District Court in representation of the two defendants named, but was thereupon expelled from the courtroom by the respondent.

There were proceedings in the District Court on July 5th preceding those set out above. These are referred to in the opinion of the majority and taken into account by the majority in reaching their conclusion. But I think it clear from the entire transcript of the proceedings of July 5th that nothing occurring in that part of the proceedings which preceded what has been set out above was considered by the respondent as a basis for the order of expulsion, and that that order was founded solely upon the filing of the impeachment application by the petitioner. In the light of the whole of the transcript, any other conclusion seems to me to be impossible.

The petition asks that the respondent be required to show cause why the order made

by him as trial judge, expelling the petitioner from further participation as counsel in the criminal case, should not be annulled and set aside. The respondent's answer to the petition is in part a demurrer and in part an allegation of facts apparently relied on to justify the order of expulsion. Strictly, there is before the court at the present time only the demurrer testing the legal sufficiency of the petition. If, under the facts set forth in the petition, which, under the demurrer, are to be taken as true, the respondent's order of expulsion is without lawful foundation, then the petition states a cause of action warranting the issuance of an order to show cause as prayed; if, on the other hand, the respondent's order is soundly founded, then the demurrer to the petition should be sustained.

There are three measures available to a judge of the District Court in respect of misconduct of an attorney. (1) The judge may invoke the statutes providing for disbarment or suspension. D.C.Code (1940) § 11—1302 empowers the District Court in general term [2] to censure, suspend from practice, or expel any member of its bar for any crime, misdemeanor, fraud, deceit, malpractice, *professional misconduct, or any conduct prejudicial to the administration of justice*. This remedy must be exercised after the presentation to the court in general term of written charges under oath, and entry by the court of an order fixing a time for a hearing thereon, and service of a certified copy of the charges and order upon the attorney charged with misconduct. D.C.Code (1940) § 11—1304. (2) The judge may summarily adjudge the lawyer guilty of contempt and punish him by fine or imprisonment. Section 268 of the Judicial Code, 28 U.S.C.A. § 385, provides that the Federal courts "shall have power . . . to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority. . . ." This remedy is, however, by the same statute limited to misconduct "in their [the court's] presence, or so near thereto as to obstruct the administration of justice . . . ." And this language has been construed in Nye v. United States, 1941, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172, to refer to geographic, rather than "causal," proximity. Also, under this remedy, no pun-

---

[2] D.C.Code (1940) § 11—310 provides that the District Court shall hold a general term and special terms and that the general term shall be held by at least three justices.

ishment can be inflicted except the fine or imprisonment specifically provided for in the statute. "The enactment is a limitation upon the manner in which the power shall be exercised, and must be held to be a negation of all other modes of punishment." Ex parte Robinson, 1874, 19 Wall. 505, 512, 22 L.Ed. 205. Mullen v. Canfield, 1939, 70 App.D.C. 168, 105 F.2d 47.[3] (3) The judge may exercise the inherent power of a court to keep order and to insure fair trial. This court recognized that power in Brown v. Miller, 1923, 52 App.D.C. 330, 286 F. 994. There the court held that it was within the power of the then Supreme Court of the District of Columbia (now the District Court of the United States for the District of Columbia) to exclude a member of the bar from acting as attorney for one party to a case where it was made to appear that he had theretofore, as attorney for the opposite party, received confidential information concerning matters involved in the case, and that he was using the same therein to the prejudice of his former client; and the court held that the trial court's power thus to exclude an attorney existed apart from the rules relating to disbarment proceedings. Other circumstances wherein this inherent power might be exercised readily occur to mind: for example, where an attorney in disorderly manner continuously interrupts and interferes with the progress of a trial. In such circumstances, while either the remedy of contempt or of general disbarment or both might be appropriate, they might, as in Brown v. Miller, be inefficacious. In some circumstances nothing but an attorney's removal will immediately accomplish a fair and orderly trial.

But I think it clear that the action of the respondent in the instant case cannot be justified as an invocation of any of the three measures which have been described above as available to a trial judge in respect of the misconduct of an attorney:

The order excluding the petitioner from further participation in the particular criminal case was not the action of the District Court in general term as provided for in D.C.Code (1940) § 11—1302 and did not follow the procedure required by D.C. Code (1940) § 11—1304.

The order of exclusion was not an adjudication of contempt and did not impose the type of penalty permissible for contempt. Indeed the remedy of contempt could not properly have been invoked because the act which occasioned the respondent's order, i.e., the filing of a paper with the Speaker of the House of Representatives requesting the respondent's impeachment, was not committed "in their [the court's] presence, or so near thereto as to obstruct the administration of justice . . .," within the meaning of that language as construed by the Supreme Court.

---

[3] In Ex parte Robinson the question whether or not a Federal court had power to disbar as a punishment for contempt was presented to the Supreme Court. The statutes involved were the Act of 1789, 1 Stat. 83, providing that courts of the United States "shall have power . . . to punish by fine or imprisonment, at the discretion of said courts, all contempts of authority in any cause or hearing before the same," and the amendment thereto, Act of March 2, 1831, 4 Stat. 487, which is in the same language as § 268 of the Judicial Code, 28 U.S.C.A. § 385. The Supreme Court held that disbarment was not lawful as a punishment for contempt, saying: "The law happily prescribes the punishment which the court can impose for contempts. The seventeenth section of the Judiciary Act of 1789 declares that the court[s] shall have power to punish contempts of their authority in any cause or hearing before them, by fine or imprisonment, at their discretion. The enactment is a limitation upon the manner in which the power shall be exercised, and must be held to be a negation of all other modes of punishment. The judgment of the court disbarring the petitioner, treated as a punishment for a contempt, was, therefore, unauthorized and void." 19 Wall. at page 512, 22 L.Ed. 205.

In Mullen v. Canfield this court declared wrongly decided United States ex rel. Alward v. Latimer, 1915, 44 App.D.C. 81, in which the action of the Juvenile Court in suspending a member of the bar from practicing before it as punishment for contempt had been sustained. In stating that this decision was wrong this court said:

". . . The Supreme Court has held that even a District Court of the United States, with authority to admit attorneys and, after proper proceedings, to disbar them, cannot disbar them in the exercise of its power to punish for contempt when a statute expressly authorizes other punishments for that offense. . . ." 70 App.D.C. at page 170, 105 F.2d at page 49. For this ruling the court relied upon Ex parte Robinson.

Finally, the respondent's order excluding the petitioner cannot, in my view, be supported as an exercise by the court of its inherent power to keep order and to insure fair trial, since the order was founded solely upon the filing of the impeachment application with the Speaker of the House; this cannot be likened to the unethical conduct in the presence of the court which was vitiating the fairness of the trial in Brown v. Miller. It is one thing for a judge to forbid an attorney's continuing in an unethical position which will vitiate the fairness of a trial; it is quite a different thing for a judge to forbid an attorney's further appearance in a trial because he has filed outside the court, i.e., with the Speaker of the House, an impeachment petition. And the filing of such a petition cannot be likened to such disorderly conduct as might warrant, in the exercise of a court's inherent power to keep order and insure fair trial, removal of an attorney.

The plain fact, under the record upon which the respondent's order of expulsion was made, is, in my view, that the order was in the nature of a penalty imposed upon the petitioner for filing the impeachment application. Such a penalty, in my view, a judge has no inherent or statutory authority to inflict; and further, I think, the Constitution forbids such a penalty. The power of a court to protect the orderly processes of justice cannot be exercised in such manner as to limit constitutional rights, such as the right of free speech, Bridges v. California, 1941, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192, or the right to petition Congress, except where there is a "clear and present danger" to the processes of justice. I think it cannot be said on the present record that the filing of the impeachment application constituted such a clear and present danger.

The majority apparently regard the whole of the proceedings of July 5th in the criminal trial, as shown by the transcript, and two adjudications of contempt to which the petitioner had been subjected on account of conduct during the criminal trial, as a background of contemptuous conduct on the part of the petitioner warranting, in connection with the filing of the petition for impeachment, the respondent's order of expulsion. The same point is, in effect, made by the respondent in that part of his answer which is in addition to the demurrer. It is asserted by the respondent that the petitioner from the outset of the criminal trial has continuously misconducted himself by contemptuous, obstructive, and intimidatory action; that he has twice been adjudicated guilty of contempt; that in filing the petition for impeachment of the respondent the petitioner has continued to demonstrate an intention not to submit to the orders of the court but to prevent the orderly administration of justice in the criminal trial; and the respondent then avers that he "is convinced that because of the cumulative and threatened additional contemptuous and obstructive conduct of the petitioner, if he were permitted to participate further in the said criminal action the court would be unable to perform its constitutional duty of administering justice in the said criminal action in a manner which would protect the rights of both the Government and all defendants, including the petitioner's clients." But the transcript of the proceedings in the District Court which ended with the order of expulsion of the petitioner from further participation in the criminal trial shows, as I have above stated, that the order was based upon the filing of the petition for impeachment with the Speaker of the House and upon that alone.

It is not to be inferred from anything stated herein that I am of the view that there are no remedies available against a member of the bar who, outside the presence of the court, commits an act with the purpose of obstructing justice, or intimidates or attempts to intimidate a judge in the trial of a case, or publicly defames a judge. It is, of course, professionally improper for an attorney, an officer of the court, publicly and falsely to defame the character of a judge and thus bring the administration of justice into disrepute. Peters v. State Bar of California, 1933, 219 Cal. 218, 26 P.2d 19; In re Knight, 1942, 264 App.Div. 106, 34 N.Y.S.2d 810, appeal dismissed, 1943, 290 N.Y. 871, 50 N.E.2d 250, certiorari denied, 1943, 320 U.S. 798, 64 S.Ct. 266; In re Troy, 1920, 43 R.I. 279, 111 A. 723; see Bradley v. Fisher, 1871, 13 Wall. 335, 355, 20 L.Ed. 646. Hence, clothing false and defamatory charges in the form of an impeachment application may not protect an attorney against disbarment proceedings for professional misconduct; and it may be that if that which is in form an impeachment application is in fact an attempt to obstruct the conduct of a trial, the person filing such an application will be the proper subject of a proceeding under § 135 of the Criminal Code, 18 U.S.C.A. § 241, which makes pun-

ishable by fine or imprisonment or both, the influencing, obstructing, or impeding, or the endeavoring to influence, obstruct, or impede, the due administration of justice in a United States court. But whether any such remedy would be applicable in respect of the present impeachment application cannot be decided in this proceeding.

Nothing that I have said herein in respect of the sufficiency of the petition and, thereunder, of the power of the respondent to make the order of expulsion, is to be taken as an approval of any contemptuous or disrespectful conduct of which the petitioner may have been guilty at any time in the course of the criminal trial. I regard all such matters as wholly outside the question involved here and accordingly I confine myself to the single question whether on the record on which the respondent acted his order of expulsion was proper.

For the reasons stated above I think the respondent's order was without lawful foundation, and that therefore the petition for writ of mandamus states a cause of action for the issuance of an order to show cause as prayed.

I am authorized to state that Chief Justice GRONER concurs in the foregoing.