**UNITED STATES of America, Plaintiff,**

v.

**Kenneth Glen MADSEN, Defendant.**

**No. 1652.**

District Court, Alaska First Division, Juneau.

Feb. 6, 1957.

Roger G. Connor, U. S. Atty., Juneau, Alaska, and C. Donald O'Connor, Asst. U. S. Atty., Ketchikan, Alaska, for plaintiff.

Wm. H. Simmons, Seattle, Wash., and Victor P. Guns, Ketchikan, Alaska, for defendant.

KELLY, District Judge.

An opinion (No. 14833) was filed in the United States Court of Appeals for the 9th Circuit on October 12, 1956, in the case of Madsen v. Hinshaw, 237 F.2d 370, being an appeal from the United States District Court for the Western District of Washington, Northern Division, from a dismissal of a petition for a writ of habeas corpus by said court on the ground that it was without jurisdiction for the reason that appellant had not applied for relief under Sec. 2255, 28 U.S.C.A.

The court affirmed the District Court but made these suggestions in the opinion, 237 F.2d 371:

"While the question is not presently before us we make bold to suggest that the Alaska Court accord to this young boy his day in court, and afford him a hearing under Sec. 2255 as expeditiously as possible.

"If it be considered that Rule 2 should be complied with and appellant be without funds to employ Alaska counsel to associate with appellant's Seattle counsel, then we further suggest that Alaska counsel be appointed by the Court for that purpose."

On November 13, 1956, a lengthy motion was filed in this court entitled "Motions under 28 U.S.C.A. § 2255 to Vacate Judgment and Commitment Heretofore Rendered in this Cause on the 7th Day of December, 1954." On November 23, this Court replied in part as follows:

"In view of the suggestion made by the United States Court of Appeals for the 9th Circuit in Case No. 14833 (October 12, 1956) [237 F.2d 370] that Kenneth Glen Madsen be afforded an opportunity to have a hearing under Sec. 2255 as expeditiously as possible, this Court is notifying the United States District Attorney of this motion and that the Court has set December 7th, 1956, at 1:30 p.m. on said date for the hearing on this motion."

This Court, in view of the statement in the opinion of the Circuit Court of Appeals above quoted, in a letter dated November 26th, advised counsel for Madsen as follows:

"* * * This Court is making no decision at this time as to whether or not the allegations are sufficient to entitle the defendant to such a hearing, but is simply granting the hearing because of the suggestion made by the Circuit Court of Appeals."

The Court also issued an order for the transportation of the petitioner and upon the application of the United States Attorney, a writ of habeas corpus ad testificandum for the appearance of the petitioner. The Court also forwarded an affidavit in forma pauperis in the event defendant was unable to employ counsel in this district as required by Rule 2 and as suggested by the 9th Circuit Court of Appeals. Affidavit in forma pauperis was executed by petitioner and filed herein on December 3, 1956, and an order entered on December 4th appointing Victor P. Guns, attorney, of Ketchikan, as local counsel thereunder. The United States Marshal went to Oklahoma and brought the petitioner back to Ketchikan, Alaska, for the hearing and petitioner was present during all sessions of the hearing.

Section 2255, 28 U.S.C.A., under which this motion is brought, provides in part:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was

in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

The only claims to be considered are that the sentence was imposed in violation of the Constitution or the laws of the United States and that the Court was without jurisdiction to impose the sentence. There is no claim here that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack.

The hearing began at 1:30 p. m. on December 7th, continuing to 4:55 p. m. of that day; it was continued on Saturday, December 8th, from 9:30 a. m. to 12:30 p. m., and from 9:30 a. m. Monday, December 10th, to 11:15 a. m. The petitioner was given every opportunity to introduce such evidence as was pertinent to the hearing, as was the United States District Attorney's office.

In order that a clear conception of all of the circumstances herein be had, a statement of the facts presented before this Court is necessary. The Reporter's transcript of the record of the proceedings had before the Honorable District Judge who passed sentence upon the petitioner was placed in evidence by stipulation of counsel, the court files and records were considered at the hearing, and testimony of a number of witnesses was taken. The facts presented by the evidence are as follows:

The petitioner, Kenneth Glen Madsen, was arraigned in the United States District Court for the District of Alaska, Division Number One at Ketchikan, on the 26th day of October, 1954, at 10:00 a. m., before the Honorable George W. Folta, United States District Judge, the defendant was present in person and represented by Charles L. Cloudy as attorney. Mr. Cloudy waived the reading of the indictment and the following Thursday morning was set for the entry of a plea. On Thursday, the 28th of October, the defendant appearing with his attorney, Charles L. Cloudy, a plea of "not guilty" was entered. On the first day of November, 1954, at 10:00 o'clock a. m., the District Attorney and an assistant were present and Robert H. Ziegler, as attorney for the defendant, presented the application of Mr. J. Lael Simmons for admission to practice before the Court in that case, and Mr. Ziegler asked, in view of the fact that Mr. Simmons was from outside the Territory, that a date certain be set. It appears from Mr. Ziegler's statement that the case had previously been set tentatively for the 26th of November and after some discussion about the notice required by Mr. Simmons because of his extensive practice in Seattle, November the 26th was set as a definite date for the trial.

On the 26th day of November, 1954, court convened at 9:30 a. m. and Mr. Henry J. Camarot, Assistant United States Attorney, advised the Court that he desired to move to have the order issued by the Court permitting J. Lael Simmons to act as counsel for the defendant Kenneth Glen Madsen, vacated, in view of certain conduct on the part of said attorney which was set forth as follows:

The attorney Simmons had contacted the District Attorney's office on several occasions with various requests and had been accommodated in every instance except he was refused the right to view the statement made by the defendant. Among other things, Mr. Simmons requested and had been given the right to inspect the car in which the deceased, Raymond Aria, was shot by Kenneth Glen Madsen. The City Police, on November 25th (Thanksgiving Day) had called the Assistant District Attorney asking if Mr. Simmons could again inspect this car. The City Police were instructed by the District Attorney that he could do so provided they made certain that the evidence was in no manner disturbed. The Police advised Simmons to come to headquarters about 4:00 p. m. when officers would be available to accompany him to the pound. Mr. J. Lael Simmons did not wait until the Police were available to accompany him to the

pound (which was located some distance from the Police Headquarters and was kept locked) so that they could be present when he examined the car. He, and another unidentified man, brought a ladder and used it to climb over the seven foot fence enclosing the auto pound, and Mr. Simmons and the other man were discovered by the Police in the car in question and an inspection of the car showed that the bullet hole in the back seat had been altered from its appearance a few days before.

After the discovery of Simmons and the other man in the car, Police officers notified Camarot, Assistant United States Attorney, who immediately went to the pound and while discussing the matter with the officers, the Judge of this court, the Honorable George W. Folta, who was taking a walk on this Thanksgiving afternoon, passed the police pound and asked Mr. Camarot and the officers what was going on, and was advised of what had happened. He immediately instructed Mr. Camarot to procure the affidavits of the Police officers covering the facts, showing what occurred, and present them to him in court the following morning. In support of his motion, the Assistant United States District Attorney filed three affidavits of Police officers and employees substantiating his statement. The Court held that the admission of a non-resident attorney is a matter of grace and not a matter of right, that the conduct of the said attorney was wholly lacking in the character requisite for an officer of the court, and that the order admitting him to practice for the purpose of this case should be vacated.

On that afternoon court convened at 1:30 p. m. and the United States District Attorney and Assistant United States Attorney were present, and the defendant was represented by Charles L. Cloudy and Robert H. Ziegler. Ziegler and Cloudy both protested that they had not expected to actually try the case but that the arrangement which they had made with Mr. Simmons was that he would use the facilities of their office and that they would sit in with him in helping to select the jury. Mr. Cloudy stated that he had appeared with the boy in court and made a trip to Juneau seeking revocation of an order suspending bail, but had not interrogated the defendant or witnesses. They, however, advised the Court that they had never withdrawn from the case. Mr. Ziegler claimed that he had spent only about an hour or an hour and a half in the jail when Mr. Simmons interviewed the defendant.

The defendant and his father, Mr. Floyd Madsen, were brought into court and Mr. Madsen stated that he had stretched himself to the limit to hire counsel and that his son, the defendant, did not have any means to hire an attorney. The Court advised the father that he would appoint counsel and the father requested permission to talk to his attorneys, indicating that he had three, Mr. Simmons, Mr. Ziegler and Mr. Cloudy. The Court permitted him to confer with Mr. Ziegler and Mr. Cloudy. After this conference the father, Floyd Madsen, asked if he could have the privilege of recommending the attorney who would be appointed. He was granted this privilege and nominated an attorney in the courtroom, Mr. Patrick J. Gilmore, Jr., who stated at that time, and so testified in court at this hearing, that because of a stomach condition and the fact that he had just completed two long trials, he was not physically capable of taking on another trial at that time.

The Court indicated that if it were not near the end of the Court's stay in Ketchikan the case could be put off but that time did not permit it and then advised that upon the execution of an affidavit in forma pauperis, Mr. Cloudy and Mr. Ziegler would be appointed counsel for the defendant. The Clerk of the Court read the affidavit and asked the defendant the questions therein and his answers indicated he did not have any money or property which would enable him to hire counsel. Defendant signed the oath and the Court asked how much time counsel would need to prepare for the defense. Mr. Ziegler requested that the

case be held over the term, which the Court refused, and the Court asked Mr. Ziegler how much time he would require and he replied, at least a week if the trial was to be held this term. The Court replied that he "supposed that was not unreasonable if you have got to have it." The trial was thereupon set for 10:00 a. m. on Monday, the 6th day of December, 1954, ten days thereafter.

It should also be pointed out that the facts show that Assistant United States Attorney Camarot told the petitioner's father in the courtroom, on November 26th, that there was nothing to prevent him from engaging other counsel for his son if he wished. There is no proof that the petitioner's father made any effort whatever to obtain further counsel and in fact he had advised the Court that he had exhausted his financial resources on the attorney he had hired, and that it would take time for him to make arrangements for more funds for this purpose. If further time were granted it would require putting the case over the term.

The evidence shows that the court was nearing the end of its term. It is the practice in the First Division of the Alaska District whose regular terms are held in Juneau, to call special terms in Ketchikan in the fall, at which cases are set for trial. The case was set, the defense was ready and, had the attorney not been guilty of conduct which not only justified but required the Court to cancel the privilege extended him to try this case, would have gone to trial on November 26th. A ten day adjournment was granted at the request of appointed counsel who, although they had been associated with Simmons, contended they did not know enough about the case to go to trial on November 26th. To give them the time needed to prepare, the case was reset for trial on December 6, 1954.

On December 6th the trial began. Considerable time was spent empanelling the jury. Before twelve jurors had been accepted the panel was exhausted and a new venire was summoned for 2:00 p. m. During the noon recess counsel for de-fense and counsel for the government had a discussion and as a result of this discussion Assistant United States District Attorney Camarot advised the Court the defendant wished to withdraw his plea of not guilty. In reply to the Court's questions the defendant stated it was his wish to withdraw his plea of not guilty and enter a plea of guilty to second degree murder, and it was so ordered in the record and the case was adjourned to the next day, December 7th, for counsel to present evidence in mitigation and extenuation. The hearing was held on December 7th and the accused was sentenced at the conclusion thereof.

At this present hearing, Mr. Ziegler testified that he and Mr. Cloudy had worked all the time from the 26th of November until the 6th of December in the preparation of this case except times when they were obliged to give attention to other urgent matters connected with their law practice. He testified he could have used more time in the preparation for trial, but that from the investigation which they had made and what he had learned in the preparation of the case, he felt that it would be to the best interests of the defendant if he would change his plea to guilty of murder in the second degree in view of the fact that conviction of first degree murder carried the death penalty in Alaska unless the jury specifically requested otherwise.

This Court feels that these attorneys were no different than most attorneys who could use more time on almost every case which they prepare for trial. Certainly they had ample time to investigate and determine how to advise the accused what to do for his own best interest in the face of the facts which confronted them as to the accused's conduct at the time of the murder.

These facts disclose that the accused, driving a car, picked up some other youths and went out along the highway outside of town and got into a quarrel with some Coast Guardsmen who were drinking just off the road, and petitioner claimed that during the row one of

them struck him; that he drove back to town, went to his father's boat where he often slept nights, and procured his pistol, drove back to the scene and found the Coast Guardsman for whom he was looking, together with another, asleep in the car; pistol-whipped one of the men in the car and shot the other through the head; calmly drove back to town and went to bed on his father's boat, where he was found shortly afterward by Police officers who arrested him and obtained a confession and a signed statement from him. It is no wonder, then, that Mr. Ziegler testified at this hearing that he not only advised Kenneth Glen Madsen to change his plea to guilty of second degree murder, but strongly urged him to do so.

The following is Mr. Ziegler's testimony in this regard:

"Q. Did you advise this boy to enter a plea of guilty? A. I did. Not to 1st degree murder, of course, but to 2nd degree murder.

"Q. And that is the plea he actually entered? A. Right. Not only did I advise him—admittedly I urged him strongly to do it.

"Q. You urged him strongly to do it? A. That's right.

"Q. And was your urging based upon the research and interviewing witnesses and the other work you have described to us? A. That is correct.

"Q. It was based on your total appraisal of the case? A. That's right."

He also testified as follows:

"Q. Well, Mr. Ziegler, when you talked to the defendant shortly before the plea, did you apprise him of the consequences of the plea? A. Yes, he was fully informed.

"Q. Did you apprise him during your discussion with him of the elements of 1st degree murder, 2nd degree murder, and manslaughter? A. I believe we went over that with him rather intensively. When I say 'we'

I should say 'I.' I don't think Mr. Cloudy ever did. I know that I did.

"Q. Did you discuss with him the various forms of punishment which could be imposed for those offenses? A. Right.

"Q. And did this take place just before he pleaded guilty, that is, within a few hours, or the same day, or did it take place over a period of time? A. I believe it was longer than just a couple of hours. I'd say probably a couple of days."

The lengthy petition filed herein is filled with extravagant claims, charges, and allegations, some of grave import, most of which were never substantiated. Numerous claims were made against the District Attorney, the appointed defense counsel, and the Court. Some of the allegations in the petition concerning the late Judge Folta were not such as would be expected from an officer of the court, are intemperate and improper and were not substantiated by the evidence at this hearing. This Court is of course aware that the present petition was not prepared by the petitioner personally, but by counsel who is apparently interested in evading and ignoring the unprofessional conduct which caused Judge Folta to remove J. Lael Simmons from the case.

To point out some of the charges made which fall of their own weight, counsel alleges in Paragraph 11 that the Court "appointed two unqualified, inadequate, inexperienced and incompetent young attorneys to represent the accused." The facts do not in any way substantiate this allegation. The two attorneys are members of one of the leading law firms of Ketchikan. Their testimony shows that they were both capable and qualified members of the bar; that they both had experience; and this Court has had an opportunity to observe both attorneys in the trial of a number of cases and knows that they are competent and capable. Further, the facts reveal that before seeking the services of Attorney Simmons, the father of the petitioner herein sought to engage both these at-

torneys to represent his son in this case and they refused to take the case purely on the basis that they had too many jury trials already set in the same term of court. They were also the counsel which J. Lael Simmons procured to act as local counsel under Rule 44 of the Uniform Rules of the District Court for the District of Alaska 1953, to move his admission to the bar, to handle the details of certain motions and other proceedings, to participate with him in the trial and aid in selecting the jury. One of them, Mr. Cloudy, had even gone to Juneau to argue for the setting aside of the order cancelling bail in this case. In court the petitioner's counsel disavowed any attempt to charge actual or intentional wrongdoing and he stated on the record that he thought the court-appointed attorneys in all sincerity did what they thought was best for petitioner.

Petitioner claims that he was deprived of his constitutional rights as a juvenile by the failure of the United States Commissioner, acting as Justice of the Peace, to make the necessary investigation before waiving jurisdiction and binding petitioner over to the grand jury. He claims that the jurisdictional limitations and requirements of the Alaska Juvenile Code, 51–3–1 et seq., A.C.L.A. 1949 were not complied with and therefore the District Court had no jurisdiction to impose sentence.

The pertinent provisions of the Alaska statutes in effect at the time are set forth below:

*Sec. 51–3–2 A.C.L.A.1949:* "Construction of Act. The Act shall be liberally construed to accomplish the purpose herein sought."

*Sec. 51–3–4:* "Procedure: Preliminary investigation: Petition. Whenever any person shall give to the court information that a child comes within the provisions of this Act, the court shall make inquiry to determine whether the interests of the public or the child require formal proceedings in the case. Such inquiry shall include a preliminary investigation of the home and environmental situation of the child, his previous history, and the circumstances of the condition alleged. The court shall have power to designate a competent person or agency to assist in making the preliminary investigation. If after the completion of such inquiry the court shall determine that further proceedings should be had, it shall order that a petition be filed, alleging briefly the facts which bring said child within the provisions of this Act, and setting forth the name, birthplace, birthdate and residence of the child; the names and residences of his parents, or his legal guardian, and if there be none, the name of the person or persons having custody or control of the child, and the name of the nearest known relative if no parent or guardian can be found. If any of the facts herein required are not known by the petitioner, the petition shall so state. The petition shall be sworn to by the person or persons presenting same."

*Sec. 51–3–9:* "Waiver of jurisdiction. If a child is charged with an offense which, if committed by an adult, would constitute a felony, the court after full investigation may waive the jurisdiction vested in it by this Act, and order such child held to await action by the grand jury; otherwise, the court shall proceed as herein provided."

It is evident from reading the above sections of the statutes that the investigation required by Sec. 51–3–4 is not the same as required by 51–3–9. The former would apply in the case of truants, wayward or abandoned children, and minor law infractions, while the latter specifically applies in cases where a juvenile has been charged with a felony.

The evidence in this case discloses that the petitioner was arrested for the crime of first degree murder; that he was brought before the United States Commissioner and advised of his rights; that he later waived preliminary hearing before the Commissioner and was held to

answer to the grand jury. It further appears that the United States Commissioner, who acts as Coroner as well as Justice of the Peace, immediately upon being advised of the death of Raymond Aria, the Coast Guardsman the petitioner was accused of killing, began an investigation into the death, held a coroner's inquest, and became thoroughly familiar with the facts and circumstances. What would constitute a "full investigation" for the purpose of waiving jurisdiction is not spelled out in the statute but surely an investigation conducted by a coroner into the death of a victim would amply comply with the requirements of the statute. When the charge is first degree murder it would take very little inquiry on the part of the United States Commissioner beyond the investigation he conducted as Coroner, to determine that the matter was one to be dealt with by the grand jury.

This Court holds that the United States Commissioner, also acting in his capacity as Coroner and as Justice of the Peace, had intimate knowledge of the facts and circumstances surrounding the occurrence which brought the petitioner into custody and that the petitioner was not thereby deprived of any constitutional rights, and that the Commissioner had ample knowledge upon which to waive jurisdiction and hold petitioner to answer to the grand jury.

■■ Petitioner claims that he was deprived of his constitutional rights by the removal of J. Lael Simmons as his attorney. The claim refers to the order of the late Judge Folta in vacating his previous order granting said Simmons authority to appear as counsel in the case of the United States v. Kenneth Glen Madsen. This was done by Judge Folta in open court November 26, 1954, in the following words:

"Since the admission of a non-resident attorney is a matter of grace and not a matter of right, an ex parte proceeding, the Court can come to no other conclusion than that this man is lacking in the character req-

uisite for an officer of this court, and an order admitting him to practice for the purpose of this case is vacated, and the attorney is ordered to have nothing further to do with this case and to refrain from doing anything within the Territory of Alaska that would constitute the practice of law."

Petitioner's counsel, in a very short brief in answer to the government's brief filed herein, argues that he is not interested in the "wrong suffered by J. Lael Simmons" nor does he appear interested in discussing the conduct of Simmons which brought about the above order, in fact throughout the proceedings petitioner's counsel steadfastly avoided facing this issue. On reflection, however, it is difficult to tell whether this proceeding has been maintained entirely out of a sincere desire to assert substantial rights of the petitioner. It must be borne in mind that J. Lael Simmons also stands to benefit from the outcome. See In re Davis, D.C., 128 F.Supp. 283. The conduct of Simmons as shown by the files, records, and evidence herein as outlined above, clearly indicates that Judge Folta had ample grounds for vacating the order issued by him under what was then Rule 44, Uniform Rules for the District Court for the District of Alaska. In fact, if the integrity of the court was to be maintained in the situation known to the Judge, he was bound to take such action.

The Constitution does not contemplate that a defendant has an inalienable right to be represented by counsel whose conduct has been found so reprehensible and unethical as to require the firm action taken by the Court. Surely the Court has the inherent power to protect the integrity of proceedings before it, and this is separate and apart from action for disbarment or contempt. In the situation faced by Judge Folta he took the only path open to him to prevent the further participation of Simmons in the case. The Court's action is supported by the decision in Laughlin v. Eicher, 1944, 79 U.S.App.D.C. 266, 145 F.2d 700. In

upholding similar action on the part of the trial judge the appellate court said:

> "An attorney who publishes such a document during the trial to which it relates should ask to be excused from the trial. His further participation would be useful neither to his client nor to the court and would seriously embarrass counsel, court, and defendants. It is immaterial in this connection whether petitioner's publication is protected by the rights of petition and of free speech or is a criminal attempt to obstruct justice, for his continued participation in the trial would be equally harmful in either case." 145 F.2d at page 702.

And again:

> Respondent turned from punishment to prevention. He might have instituted proceedings for petitioner's disbarment or suspension from practice. He chose a more lenient and more promptly effective course. He exercised only the elementary right of a court to protect its pending proceedings, which includes the right to dismiss from them an attorney who cannot or will not take part in them with a reasonable degree of propriety." 145 F.2d at page 702.

See also Viereck v. U. S., 1942, 76 U.S. App.D.C. 262, 130 F.2d 945, reversed on other grounds, 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734.

■ Petitioner claims that the signing of the pauper's oath by him was coerced by the Court so as to deprive him of the right to counsel of his own choosing. This contention is not borne out by the record.

When the petitioner was first arrested, his father, on his behalf, sought to have him represented by Ziegler and Cloudy, the attorneys who were later appointed by Judge Folta and who represented the accused, after the removal of Simmons. While it is true that Simmons was regarded as chief counsel and expected to carry the laboring oar at the trial, he, nevertheless, had on his own initiative, associated Ziegler and Cloudy with him from the beginning and they appeared in the case even before Simmons himself. They performed such services in connection therewith as making a trip to Juneau to submit a motion requesting an order from Judge Folta revoking order suspending bail (Cloudy, September, 1954); appearing at arraignment (Cloudy, October 26, 1954); appearing for plea (Cloudy, October 28, 1954); appearing to move for admission of J. Lael Simmons as associate counsel and setting date for trial (Ziegler, November 1, 1954); accompanying Simmons to jail to interview the accused for a period of one and a half hours (Ziegler, November, 1954); and while it is true that they had originally declined to take the case when approached by the elder Madsen and they had not been retained herein by the accused or his father, they had been hired by Simmons and at least expected to aid in the selection of the jury and sit with Simmons during the trial.

The elder Madsen advised the Court on November 26th that the accused had no money of his own and that he himself had exhausted his resources and would need time to raise further funds. At that time he asked the Court for permission to name counsel to be appointed by the Court to defend his son and actually requested the appointment of Patrick J. Gilmore, Jr., and, had not Mr. Gilmore refused to take the case because of his physical condition, would have been perfectly willing to have his son execute the affidavit in forma pauperis for the appointment of Gilmore; and further, the elder Madsen, during the ten days which elapsed from November 26th until the trial started on December 6th, made no effort to procure other counsel on behalf of his son.

■ Petitioner further claims that the two counsel appointed by the Court were not competent, that they had inadequate time to prepare, and that he was

coerced and improperly induced to plead guilty. These allegations fail on the record. The Court adjourned the trial ten days. The attorneys, as shown above in this opinion, were well qualified and capable lawyers who devoted most of the time during those ten days to the preparation of the case for trial. Their investigation led them to advise their client, after the jury was practically drawn, to plead guilty to the lesser offense of second degree murder. The petitioner was afforded effective assistance of counsel in accordance with the guarantees of the Sixth Amendment to the Constitution. There was adequate time to prepare. The preparation was in fact adequate, and counsel properly advised petitioner of his position under the law. No motion for continuance was filed after the trial date was fixed for December 6th. No complaint was made by the petitioner or his father at any time before sentence that the Court-appointed attorneys were not representing the accused adequately. There was no denial of due process under the Fifth Amendment.

Avery v. State of Alabama, 1940, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377; Diggs v. Welch, 1945, 80 U.S.App.D.C. 5, 148 F.2d 667; United States v. Wight, 2 Cir., 1949, 176 F.2d 376; United States ex rel. Thompson v. Dye, D.C.W.D.Pa. 1952, 103 F.Supp. 776; United States v. Sumpter, D.C.N.Y.1953, 111 F.Supp. 507; United States v. Stoecker, 7 Cir., 1954, 216 F.2d 51; United States v. Yager, 7 Cir., 1955, 220 F.2d 795; Sherman v. U. S., 9 Cir., 1957, 241 F.2d 329.

In Shepherd v. Hunter, 10 Cir., 1947, 163 F.2d 872, the Court held that one charged with a crime is not deprived of his constitutional right to the effective assistance of counsel merely because the counsel assigned to him by the Court, after an investigation of the facts, advised or even urged him to plead guilty to the charge.

■ When collaterally attacked, the judgment of a court carries with it a presumption of regularity. The burden of proof is on petitioner to establish his claims by a preponderance of the evidence. Johnson v. Zerbst, 1938, 304 U.S. 458, at page 468, 58 S.Ct. 1019, at page 1024, 82 L.Ed. 1461. This burden was not sustained in this extensive hearing. The motion is denied.