MATTER OF SUN

Application for Classification as Refugee

A-14328296

*Decided by Regional Commissioner December 21, 1966*

Refugee classification under the proviso to section 203(a)(7), Immigration and Nationality Act, as amended, is denied an applicant who had been firmly resettled in another country or area (Nationalist China on Formosa) after he had fled his homeland (Communist China) in 1949 because of fear of persecution on account of political opinion.

This case has been certified to the Regional Commissioner following denial by the District Director of an application for refugee status under section 203(a)(7) of the Immigration and Nationality Act, as amended, and denial of adjustment under section 245 of that Act, as amended.

The facts in this case and the reasoning applied by the District Director are as follows:

This applicant was born on September 6, 1932 in Shanghai, China. He is unmarried and is now a citizen of Nationalist China in Formosa. He was admitted to the United States as a Government Official under section 101(a)(15)(G)(i) as a clerk with the Chinese Delegation to the Military Staff Committee of the United Nations on March 20, 1962 at San Pedro, California. He maintained that status until March 23, 1965 at which time he was granted a change of nonimmigrant status to student under section 101(a)(15)(F). He is maintaining student status, studying at the RCA Institute in New York City. His authorized stay will expire on April 3, 1967.

He has applied for classification as a refugee under the provisions of section 203(a)(7) of the Immigration and Nationality Act, as amended. In his application (Form I-590A) he has stated that he fled from China in May 1949 because of the advance of the Communist forces. From May 1949 until February 1962 he resided in Taipei, Taiwan, Formosa. Also, in connection with this application he has stated that he enlisted in the Chinese Air Force in Formosa in 1949 and served as an enlisted man until March 1962 when he was separated as a staff sergeant. His family, consisting of his father, mother, and four brothers and sisters still resides on the Chinese mainland, although he has had no contact with them in many years. Records in this case show that the applicant was in possession of passport #07882 issued by the Republic of China. He now states that this passport was given to the Chinese Consul in New York for revalidation in September 1965 and has not been returned to him.

36

Application is being made here under the provisions of section 203(a)(7) of the Immigration and Nationality Act, as amended, which reads as follows:

(7) Conditional entries shall next be made available by the Attorney General, pursuant to such regulations as he may prescribe and in a number not to exceed 6 per centum of the number specified in section 201(a)(ii), to aliens who satisfy an Immigration and Naturalization Service officer at an examination in any non-Communist or non-Communist dominated country, (A) that (i) because of persecution or fear of persecution on account of race, religion, or political opinion they have fled (I) from any Communist or Communist-dominated country or area, or (II) from any country within the general area of the Middle East, and (ii) are unable or unwilling to return to such country or area on account of race, religion, or political opinion, and (iii) are not nationals of the countries or areas in which their application for conditional entry is made; or (B) that they are persons uprooted by catastrophic natural calamity as defined by the President who are unable to return to their usual place of abode. For the purpose of the foregoing the term "general area of the Middle East" means the area between and including (1) Libya on the west, (2) Turkey on the north, (3) Pakistan on the east, and (4) Saudi Arabia and Ethiopia on the south: *Provided*, that immigrant visas in a number not exceeding one-half the number specified in this paragraph may be made available, in lieu of conditional entries of a like number, to such aliens who have been continuously physically present in the United States for a period of at least two years prior to application for adjustment of status.

It is conceded that the applicant is a person who has fled from communist China because of fear of persecution on account of political opinion. It is also conceded that he is unwilling to return to that country on account of his political opinion. The question we must resolve now is whether it was intended that the benefits of section 203(a)(7) (which were added to the Immigration and Nationality Act by the Act of October 3, 1965) be extended to such persons who have succeeded in establishing themselves in another country after they had fled from their homeland. Inasmuch as this point is not specifically mentioned in the law, it was necessary to study the legislative history of Public Law 89-236 which added section 203(a)(7) in its present form to the Immigration and Nationality Act. We find in Report #748, Senate Committee on the Judiciary dated September 15, 1965 the Committee on the Judiciary considering H.R. 2580 (which was enacted into law as Public Law 89-236) stated on Page 16:

As passed by the House, the bill in section 203(a)(7) provides that not to exceed 10,200 refugees from communism and an area of the Middle East may be granted conditional entries each year. As amended by the committee, this category of refugees is enlarged to include aliens who have been uprooted from their place of usual abode by a catastrophic natural calamity. It is the purpose of the committee in adding this group of persons to the refugee category to provide relief in those cases where aliens have been forced to flee their homes as a result of serious natural disasters, such as earthquakes, volcanic eruptions, tidal waves, and in any similar natural catastrophes. The Congress, in a prior case granted relief to such persons through the enactment of the Refugee Relief Act of 1953, where the term "refugee" was defined as follows:

Sec. 2. (a) "Refugee" means any person in a country or area which is neither Communist nor Communist-dominated who because of persecution, fear of persecution, natural calamity, or military operations is out of his usual place of abode and unable to return thereto, who has not been firmly re-

37

settled, and who is in urgent need of assistance for the essentials of life or for transportation.

Refugees have been admitted to the United States through the sponsorship of voluntary agencies and private citizens. The Committee anticipates that such practice will continue so that each refugee will have an opportunity to adjust and develop in this country without fear of abandonment and without the possibility of becoming a public charge.

The conditional entry of refugees as proposed in this bill is not unlike the parole procedure utilized during the existence of the so-called Fair Share Act (sec. 212(d)(5)) and it is intended that the procedures remain the same.

In House of Representatives Report #745, August 6, 1965, Page 15, the following statement appears:

The conditional entry of refugees as proposed in this bill is not unlike the parole procedure utilized during the existence of the so-called Fair Share Act (sec. 212(d)(5)) and it is intended that the procedure remain the same. Since the use of the term "parole" conveys a connotation unfavorable to the alien, the substitute term "conditional entry" has been used to avoid any such implication.

The so-called Fair Share Refugee Act (the act of July 14, 1960), with the exception of the sections which permit adjustment of status of refugees already admitted to the United States under its provisions, is repealed. The repeal of this legislation will again permit the United States to determine who is or who is not a refugee.

A further indication of the congressional intent is found in the following statement of Senator Edward M. Kennedy concerning H.R. 2580, which appears on page 23351 of the Congressional Record of September 17, 1965:

The plight of refugees has been of special concern to us since the end of World War II. Every outbreak of violence between nations leaves its toll in the homeless and dispossessed. Our concern for refugees was capped in 1960 by the passage of the fair share law, under which we agreed to accept up to 25 percent of persons displaced to other lands in a prior 6-month period, if these persons fell under the mandate of the United Nations High Commissioner for refugees. This law was passed in keeping with World Refugee Year. By placing refugees under our general immigration law for the first time, the bill before us will do away with the main provisions of the fair share law, thus allowing the United States to make its own determination of who is or is not a refugee.

A thorough reading of the debate on the subject of refugees contained in both House and Senate reports reveals that the Congress intended to alter our refugee policy, as established in the Refugee Relief Act of 1953 and amended by the Act of July 14, 1960, in three ways:

1. To permit the United States to make its own determination as to who is a refugee, rather than accept the determinations made by the United Nations High Commissioner for refugees.
2. To extend the definition of "refugee" to include persons who may become victims of a natural calamity.
3. To eliminate the use of the word "parole" when allowing refugees to enter the United States because the word "parole" has a connotation unfavorable to the alien.

In the past we have accepted as refugees only those persons otherwise qualified who have not been firmly resettled in another country. Those persons who

may have fled from their homeland and who have been accepted by another country as permanent residents and have established themselves firmly there can no longer be considered to be fleeing from persecution. The Congress obviously did not intend that the fact that an individual had fled from a country because of persecution or fear of persecution should, regardless of intervening circumstances, qualify him forever as a refugee.

With this background we can now apply these principles to the present case. The applicant fled Communist China in 1949 and was a refugee when he entered Formosa in that year. Since that time he has lived in Formosa until 1962, a period of 13 years. He was a member of the Armed Forces of that country and, after discharge, was given employment as a representative of the Republic of China to the United Nations. He was so employed from 1962 to 1965. Seventeen years have now elapsed since this applicant fled his homeland. For sixteen of those years he received his livelihood from the Chinese Government of Formosa. The applicant has established himself firmly in that country and obviously has all of the rights of residence and employment there that can be extended to anyone, regardless of place of birth. He can no longer claim that he is fleeing from persecution.

Furthermore, throughout the hearings on H.R. 2580, in both the House and the Senate, it was repeatedly emphasized that section 203(a)(7) was *not intended* to increase the number of refugees admitted to the United States. Obviously, if we were to consider this applicant an eligible refugee, it would mean that countless thousands of aliens in similar circumstances who have fled their homelands and have built new lives in other countries would now come within the scope of section 203(a)(7). Such an interpretation would defeat the purpose of our refugee policy. In view of the foregoing it is concluded that the applicant is not now a refugee within the scope of section 203(a)(7) of the Immigration and Nationality Act, as amended, and is, therefore, not eligible for adjustment of status under the provisions of that section.

Because the applicant is not eligible for a preference status he must necessarily be considered as a non-preference alien. The non-preference quota for China, the country of the applicant's birth, is oversubscribed and an immigrant visa is not immediately available. The application for adjustment under section 245 of the Immigration and Nationality Act, as amended, must therefore be denied.

No further representations have been made following notice to the applicant of certification to this office.

The reasons used by the District Director to deny this application have been carefully reviewed. They are all valid and require no further comment. We find that this application must be denied and the following order will be entered.

*It is ordered* that the decision of the District Director be affirmed.