Vicente Villamosa **NAZARENO** et al.,
Plaintiffs,

v.

The **ATTORNEY GENERAL OF the
UNITED STATES**, Defendant.

Civ. A. No. 970-73.

United States District Court,
District of Columbia.

Nov. 20, 1973.

Jack Wasserman, Washington, D. C., for plaintiffs.

Richard I. Chaifetz, Atty., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

WILLIAM B. JONES, District Judge.

Plaintiffs Fe Nazareno and Enrique Templora Targa are both 32 year old unmarried aliens, who were legally adopted pursuant to judicial decrees of the States of Maryland and California in 1970 and 1972. Petitions were filed on their behalf by their adoptive parents under 8 U.S.C. §§ 1153, 1154, to classify them as a daughter and a son respectively under the Immigration and Nationality Act of 1952, as amended (Act). These petitions were denied on the ground that, since the petitioners were not adopted until they were 30 and 32 years of age, respectively, they did not fulfill the age requirement of section 101(b)(1)(E) of the Act, 8 U.S.C. ·§

1101(b)(1)(E), and could not be classified as "daughter" and "son", respectively, as those terms are used in section 203(a)(1) of the Act, 8 U.S.C. § 1153(a)(1). The plaintiffs seek a judgment setting aside the orders of the Board of Immigration Appeals (Board) which sustained the District Director's refusals to approve their petitions. The defendant has filed a motion to dismiss or, alternatively, for summary judgment, and the plaintiffs' motion for summary judgment stands in opposition to that motion.

■ The scope of this Court's judicial review in cases of denial of preference classification is limited to a determination as to whether the Board misapplied the statute or abused its discretion in affirming the District Director's decisions. This Court will not substitute its judgment for that of the Attorney General, nor make findings of facts. Kam Ng v. Pilliod, 279 F.2d 207, 210 (7 Cir., 1960), cert. den. 365 U.S. 860, 81 S.Ct. 828, 5 L.Ed.2d 823 (1961); Jarecha v. Immigration and Naturalization Service, 417 F.2d 220 (5 Cir., 1969); 8 U.S.C. § 1105a. Butterfield v. Attorney General, 143 U.S.App.D.C. 152, 442 F.2d 874 (1971), cited by plaintiffs in this regard, is distinguishable. There the Immigration and Naturalization Service (I.N.S.) demanded more than the statute propounded, and the Court granted relief on the grounds that the reason for the denial of the visa had nothing to do with the statutory requirements; here we are dealing with the very interpretation of the statute itself. The scope of this Court's review, therefore, is to the law and not to the facts. 5 U.S.C. § 706.

Prior to 1959, there was no definition of the terms "son" or "daughter" as those terms are used for immigration purposes under the Act, 8 U.S.C. § 1153(a)(1), but was interpreted, in the absence of clear congressional intent, to include adopted sons and daughters without the limitations placed on the term "child" by section 101(b)(1) of the Act. 8 U.S.C. § 1101(b)(1). Matter of

R, 5 I & N Dec. 438 (1953). However, in 1959, in amending section 205(b) of the Act, Congress, in describing the procedure to be followed by the Attorney General in approving immigration visas, set forth its intent and interpretation by limiting the terms "son" and "daughter" by the term "parent" as found in section 101(b)(2) of the Act, 8 U.S.C. § 1101(b)(2), which is in turn limited by section 101(b)(1) of the Act, 8 U.S.C. § 1101(b)(1). A "son" or "daughter" for immigration purposes, therefore, if adopted, must be found to lie within section 101(b)(1)(E) of the Act, i. e., that for immigration purposes the adoption must take place while the child was under the age of 14 years and must have resided with and have been in the custody of the adopting parent or parents for at least two years thereafter. P.L. 86-363, 73 Stat. 644, 1959 U.S.Code Cong. and Adm.News, p. 724. The Board held that this amendment overruled its prior decision in *Matter of R, supra*; Matter of P, 8 I & N Dec. 507 (1960); and it has subsequently interpreted the terms "son" and "daughter" in reference to section 101(b)(1), 8 U.S.C. § 1101(b)(1). Matter of Caramanzana, 12 I & N Dec. 47, 48 (1967). In 1965, Congress replaced the national origin quota system with the current system. P.L. 89–236, 79 Stat. 911, 1965 Code Cong. and Adm.News, p. 883. In the course of this change, revising chapter 1 of title 2 of the Act, Congress eliminated the portion of section 205(b) referred to above. Plaintiffs contend that this action on the part of Congress indicated an intent on the part of Congress to reestablish the rule of *Matter of R, supra*. This Court does not so construe the action of Congress.

■ The omission of language previously used does not necessarily indicate a change in the intent of Congress. Rosenberg v. Yee Chien Woo, 402 U.S. 49, 91 S.Ct. 1312, 28 L.Ed.2d 592 (1971). In the 1959 amendment to the Act, Congress was setting forth procedures that petitioners and the Attorney General should follow in regard to immi-

grant visa applications, and within this scheme Congress indicated its intent concerning the meaning of the terms "son" and "daughter." In 1965, Congress changed the entire system regarding the allocation of immigrant visas, eliminating the national origin quota system in behalf of a "new system of allocation based on a system of preferences which extends priorities in the issuance of immigrant visas to close relatives of U.S. citizens and aliens lawfully admitted for permanent residence . . . " S.Rep. 748 (89th Cong., 1st Sess., 1965), 1965 U.S.Code Cong. and Adm.News, p. 3329. In other words, in changing the system, Congress was altering the procedures to be followed in allocating immigrant visas. This change of procedure can in no way be taken to import a change in the meaning of terms within the statute itself without such being so indicated. Nor is there any indication that such change was intended. In 1959, Congress specifically and intentionally indicated the meaning it attached to the terms "son" and "daughter." It would be illogical to conclude that Congress, by a single omission, would reverse its intention in this matter without so much as indicating its intent to do so, especially when the matter under amendment was the system itself; nor, since 1959, has Congress given any indication that the interpretation given by the I.N.S. is contrary to its purpose. Therefore, deference must be given to the interpretation given the statute by the officers or agency charged with its administration, Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1964), reh. den. 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283; nor must its construction be the only reasonable one. Unemployment etc., Commission v. Aragon, 329 U.S. 143, 153, 67 S.Ct. 245, 91 L.Ed. 136 (1946). "Particularly is this respect due when the administrative practice at stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion . . .' ."

Power Reactor, etc., Co. v. International, etc., Electricians, 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961). This Court concludes that I.N.S.'s interpretation of the terms "son" and "daughter" as used for immigration purposes under section 203(a)(1) of the Immigration and Nationality Act, 8 U. S.C. § 1153(a)(1), is not unreasonable.