CHINESE AMERICAN CIVIC COUNCIL
et al., Appellants,

v.

ATTORNEY GENERAL OF the
UNITED STATES.

No. 75–1870.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 24, 1976.

Decided Oct. 11, 1977.

Jack Wasserman, Washington, D.C., with whom Mark A. Mancini, Washington, D.C., was on the brief for appellants.

Richard I. Chaifetz, Atty., Dept. of Justice, Washington, D.C., with whom B. Franklin Taylor, Jr., Acting Chief, Government Regulations Section, Crim. Div., Dept. of Justice, and James P. Morris, Atty., Dept. of Justice, Washington, D.C., were on the brief for appellee.

Before TAMM and MacKINNON, Circuit Judges, and KAUFMAN,* District Judge for the District of Maryland.

Opinion for the court filed by Circuit Judge MacKINNON.

Opinion filed by KAUFMAN, District Judge, concurring specially.

MacKINNON, Circuit Judge:

Between 1949 and 1956 the five Chinese appellants here fled to Hong Kong to escape communist persecution in their native land. They have resided in Hong Kong ever since. When their 1971–72 applications for conditional entry into the United States as Seventh Preference refugees were denied by the District Director at Hong

Kong of the United States Immigration and Naturalization Service (INS), they sought judicial review. In that proceeding the District Court found that appellants[1] lacked standing and dismissed the suit. In its opinion the court also noted that appellants in any event were not entitled to relief on the merits since the evidentiary record they presented to the Immigration Service indicated they were "firmly resettled" in Hong Kong and thus did not demonstrate that they were still refugees within the controlling statute, 8 U.S.C. § 1153(a)(7). *Chinese American Civic Council v. Attorney General*, 396 F.Supp. 1250 (D.D.C.1975). We affirm the District Court upon the substantive grounds relied upon by the District Director.

## I.

The individual appellants, all originally citizens of China, fled to Hong Kong at various times after the communists assumed power in that country. They arrived in Hong Kong between 1949–1956 and all obtained and presently possess Hong Kong Identity Cards.[2] Appellant, Chinese Ameri-

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

1. Chinese American Civic Council, Pik Kuen Lee, King Sun Yuen, On Au Chiu, Shek-Chi Chan and Shu Cheung Lau. Hereafter, data with respect to the individual defendants refers to them in the above sequence.

2. The affidavit of appellants' counsel states:
   A Hong Kong Identity Card merely has a person's name, photograph, date of birth or age, a number and reference to nationality. It is a card required of all persons in Hong Kong pursuant to the Registration of Persons Ordinance of 1960. It is not a travel document and confers no residence privileges. It is, however, some evidence that the bearer resides in Hong Kong. It differs from a Hong Kong Certificate of Identity which is the "equivalent of a passport" (Affidavit, R. 6).
   The applications of all appellants stated that each had a Hong Kong Identity Card and the number thereof and stated that their respective residences in Hong Kong began: 1951, 1949, 1955, 1956, 1953 (R. 6). Their applications were filed in 1971 and 1972 and were denied in 1974 and 1975.
   The Hong Kong Immigration Ordinance, 1971, provides:

2. (1) In this Ordinance, unless the context otherwise requires—
   \*　　\*　　\*　　\*　　\*　　\*
   "Chinese resident" means an immigrant who—
   (a) is wholly or partly of Chinese race; and
   (b) has at any time been ordinarily resident in Hong Kong for a continuous period of not less than seven years;
   \*　　\*　　\*　　\*　　\*　　\*
   8. (1) The following persons shall have the right to land in Hong Kong, that is to say—
   \*　　\*　　\*　　\*　　\*　　\*
   (c) Chinese residents but subject to section 20(6).
   \*　　\*　　\*　　\*　　\*　　\*
   20. (1) The Governor in Council may make a deportation order against an immigrant, other than a Chinese resident, a United Kingdom belonger or a resident United Kingdom belonger, if—
   (a) the immigrant has been found guilty in Hong Kong of an offence punishable with imprisonment for not less than two years; or
   (b) the Governor in Council deems it to be conducive to the public good.
   (2) Subject to subsection (3), the Governor in Council may make a deportation order

can Civic Council, is a non-profit organization which sponsors and provides assistance to conditional entrants and refugees.

Appellants filed applications for conditional entry pursuant to 8 U.S.C. § 1153(a)(7)[3] in 1971 and 1972 with the District Director of the United States Immigration and Naturalization Service in Hong Kong.[4] All five applications were considered, as the statute requires, by "an Immigration and Naturalization Service Officer" who notified each applicant by letter that he was satisfied from his "careful inquiry" they were "not eligible for the benefits of section 203(a)(7) of the Immigration and Naturalization Act."[5]

against a Chinese resident or a United Kingdom belonger, other than a resident United Kingdom belonger, if—
(a) such person has been found guilty in Hong Kong of an offence punishable with imprisonment for not less than two years; or
(b) the Governor in Council deems it to be conducive to the public good.
\* \* \* \* \* \*
(6) If a deportation order is in force against a person who has the right to land in Hong Kong by virtue of section 8(1), such right shall cease while the deportation order is in force.

3. When subject applications were being considered by the Immigration Service, 8 U.S.C. § 1153 provided:
(a) Aliens who are subject to the numerical limitations specified in section 1151(a) of this title shall be allotted visas or their conditional entry authorized, as the case may be, as follows:
\* \* \* \* \* \*
(7) Conditional entries shall next be made available by the Attorney General, pursuant to such regulations as he may prescribe and in a number not to exceed 6 per centum of the number specified in section 1151(a)(ii) of this title, *to aliens who satisfy an Immigration and Naturalization Service officer* at an examination in any non-Communist or non-Communist-dominated country, (A) that (i) because of persecution or fear of persecution on account of race, religion, or political opinion they have *fled* (I) from any Communist or Communist-dominated country or area, or (II) from any country within the general area of the Middle East, and (ii) are unable or unwilling to return to such country or area on account of race, religion, or political opinion, and (iii) are not nationals of the countries or areas in which their application for conditional entry is made; . . .

(Emphasis added.) This subsection outlines the standards for aliens who claim they are refugees in flight from Communism to attain so-called Seventh Preference conditional entry status.

4. The following summary sets forth the stated facts with respect to the individual appellants and their applications:

*APPLICATIONS*

| Applicant | Left China | Filed | Elapsed Time * | Denied |
|---|---|---|---|---|
| Lee | 1951 | 9/17/71 | 20 years | 3/24/74 |
| Yuen | 11/1949 | 8/25/71 | 21 years 9 months | 2/20/74 |
| Au | 2/55 | 1/21/72 | 17 years | 1/25/75 |
| Chan | 4/56 | 1/21/72 | 15 years 9 months | 1/23/75 |
| Lau | 12/53 | 10/29/71 | 17 years 10 months | 11/14/74 |

* Elapsed time from departure from China to date of filing instant application for Seventh Preference Entry.

5. Each of the applicants thereafter received a letter which stated:
Dear Sir/Madam:
I am sorry to inform you that it is necessary for me to deny your application for conditional entry. After the most careful inquiry and after extensive consultation with appropriate Hong Kong authorities with respect to the effect of the Hong Kong Immigration Ordinance 1971, I have concluded that you appear to be eligible in all respects for official recognition by the Immigration Department, Hong Kong, as a "Chinese resident" within the meaning of the Ordinance which became effective April 1, 1972. The Ordinance accords "Chinese resident" status to

In deciding on the evidence presented to him that each applicant was "not eligible for the benefits under section 203(a)(7)," *supra,* because each of them "is *firmly resettled* outside the country from which he fled," (emphasis added) the Immigration Officer was denying Seventh Preference entry in accordance with the Supreme Court decision in *Rosenberg v. Yee Chien Woo,* 402 U.S. 49, 91 S.Ct. 1312, 28 L.Ed.2d 592 (1971).[6]

■ Although appellants have never been in the United States they challenged the denials of their applications by suits in the United States District Court for the District of Columbia requesting a declaratory judgment, pursuant to 8 U.S.C. § 1329 and 28 U.S.C. § 704. Their basic complaint is that the denials by the INS were arbitrary, capricious, contrary to law and inval-

id. Upon the alternative motion by the INS to dismiss or for summary judgment the District Court found that appellants lacked standing. It also observed that standing "apparently has never been granted to a person outside the United States challenging the denial of entry or immigration eligibility" and that serious practical consequences would result should a person "anywhere in the world" be afforded access to the federal courts to contest immigration eligibility. 396 F.Supp. at 1251. With respect to the Chinese American Council the court found that it also lacked standing for want of "concrete injury to itself or to its members." *Id.* at 1252. We affirm that finding without further discussion. *Laird v. Tatum,* 408 U.S. 1, 13, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972); *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *Association of Data Processing Ser-*

those persons who have legally resided in Hong Kong for 7 or more years and to those persons who have been residing in Hong Kong, whether legally or not, since prior to April 1, 1965. A "Chinese resident" enjoys the privilege of unconditional residence and is deemed under U.S. law to be firmly resettled. A person who is firmly resettled outside the country from which he fled is not eligible for the benefits of section 203(a)(7) of the Immigration and Nationality Act.

If you believe that the foregoing basis for the denial of your application is erroneous or does not apply to you, your application may be considered further if you, no later than 30 days from the date of this letter, notify this office of the basis for your objection supported by any evidence and request that you be interviewed with respect to your application for conditional entry.

I repeat my regret that it has been necessary to take this action.

> Sincerely,
> /s/ Sam I. Feldman
> Sam I. Feldman
> Officer-in-Charge

**6.** That opinion holds that the statute which opens the doors of this country to those who have "fled" from fear of communism, or its persecution, imposes a requirement that applicants be in flight at the time they apply for conditional entry to this country and that those who became "firmly resettled" in another non-communist country after flight from a communist country are not, under the statute, eligible

under § 203(a)(7) for conditional entry to the United States. As Justice Black remarked:

It was never intended to open the United States to refugees who had found shelter in another nation and had begun to build new lives. Nor could Congress have intended to make refugees in flight from persecution compete with all of the world's *resettled refugees* for the 10,200 entries and permits afforded each year under § 203(a)(7). Such an interpretation would subvert the lofty goals embodied in the whole pattern of our refugee legislation.

In short, we hold that the "resettlement" concept is not irrelevant. It is one of the factors which the Immigration and Naturalization Service must take into account to determine whether a refugee seeks asylum in this country as a consequence of his flight to avoid persecution.

402 U.S. at 56, 91 S.Ct. at 1316 (emphasis added). The opinion further sets forth the correct legal standard to use in determining refugee and flight status under § 203(a)(7):

[T]he physical presence must be one which is reasonably proximate to the flight and not one following a flight remote in point of time or interrupted by intervening residence in a third country reasonably constituting a termination of the original flight in search of refuge.

402 U.S. at 57, 91 S.Ct. at 1317. This same standard may be applied in determining whether appellants are to be considered to be still in flight even though they have resided in Hong Kong continuously for 16 to 20 years, discussed *infra.*

*vice Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Ex Parte Levitt*, 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1938).

More important to our decision, the District Court also stated that even if appellants had standing, on the factual record here, they were "confronted with an almost irrebuttable presumption that at the present time, twenty to twenty-five years after having left mainland China, they have 'firmly resettled' in Hong Kong and are no longer 'in search of refuge.' " *Id.*, n. 2. The court reached this conclusion independent of any application of the "Hong Kong seven year rule" which the District Director had referred to in his letter to appellants denying their applications because he found them to be "firmly resettled." [7] One plaintiff, Shui Chong Kwan, was found to have standing since he had been in the United States since 1967, a factor clearly distinguishing him, for purposes of standing,[8] from the other plaintiffs. His case was remanded to the INS for further proceedings. Accordingly, Kwan did not appeal.

## II

The parties have argued on appeal both the standing question and the merits of whether appellants were wrongfully denied refugee status by the INS District Director. Accordingly, we are not pressed to reach a decision on the standing issue since applicable legal standards lead us to conclude that the Immigration officer correctly decided on the record before him that appellants are not refugees under 8 U.S.C. § 1153(a)(7). Prudential considerations also restrain us from deciding the difficult and unquestionably far-reaching standing question when the merits of the case readily provide a fair, clear resolution of the appeal.[9]

Finally, we find that the record on appeal provides us with an adequate basis for affirming the District Court's order on grounds other than lack of standing.

The District Court not only had before it a motion to dismiss and a motion for summary judgment but also, as the court's decision states,[10] considered the "entire admin-

---

**7.** Both the terms "firmly resettled" and "fled" are closely related to the central theme of all 23 years of refugee legislation—the creation of a haven for the world's homeless people. *Rosenberg v. Woo*, 402 U.S. at 55, 91 S.Ct. at 1316.

**8.** There is no question that a person present in the United States has standing to challenge a denial of preference under § 1153(a)(7). *Rosenberg v. Woo, supra. See* note 15 *infra.*

**9.** Granting standing in a case such as this would result in serious practical considerations. It would, in the words of the District Court, afford "a Federal forum for a person anywhere in the world challenging denial of entry or immigration status. . . ." 396 F.Supp. at 1251. Of course practical considerations of arguable certainty should not deny what the law in principle requires. However, such an issue should be decided only when it is essential to disposing of the case and not in cases such as this where the record readily allows for an alternative decision on the merits which were before the District Court in the form of a motion for summary judgment. Thus, it is not necessary here to decide the standing issue since the appellants are clearly not entitled to conditional entry as refugees.

In *Chandler v. Judicial Council*, 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970), the Supreme Court recently reserved judgment on a jurisdictional issue, stating:

[F]inding the prerequisites to support a conclusion that we do have appellate jurisdiction in this case would be no mean feat. It is an exercise we decline to perform since we conclude that in the present posture of the case other avenues of relief on the merits may yet be open . . . . .

398 U.S. at 86, 90 S.Ct. at 1654. The Chief Justice then remarked for the Court that the jurisdictional ground was not being reached for reasons markedly similar to those we are employing:

Whether the Council's action was administrative action not reviewable in this Court, or whether it is reviewable here, plainly petitioner has not made a case for the extraordinary relief of mandamus or prohibition.

*Id.* at 89, 90 S.Ct. at 1656.

Accordingly, we do no more than decline to decide whether appellants have standing, when "plainly [appellants have] not made a case for the . . . relief [requested]." 398 U.S. at 89, 90 S.Ct. at 1656.

**10.** Accordingly, upon consideration of defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, and plaintiffs'

istrative record" and heard argument. Our review of the record accordingly leads us to conclude that summary judgment could have been entered in favor of appellees on the same substantive grounds that the agency relied upon.[11] We therefore affirm the District Court's order on the ground that the motion for summary judgment should have been granted.[12]

### III

Turning, then, to the merits of appellants' claim, we find that the undisputed facts which were presented to the Immigration officer by appellants, specifically that sixteen to twenty years had elapsed between appellants' departures from China

and their applications for refugee status, clearly were sufficient to support his conclusion that appellants were not entitled to conditional entry. Appellants did not present any facts to rebut the normal conclusion from such extended residence that appellants were firmly resettled and no longer in flight. On that ground we affirm the judgment of the District Court. Our ground for this conclusion is based on the same reason expressed in the letter of the Immigration officer,[13] i. e., that appellants have "firmly resettled" so as not to be refugees under section 1153(a)(7).[14] This result is supported by the Supreme Court's decision in *Rosenberg v. Yee Chien Woo*, 402 U.S. 49, 91 S.Ct. 1312, 28 L.Ed.2d 592 (1971).

---

Cross Motion for Summary Judgment, the memoranda of points and authorities in support thereof and in opposition thereto, 'the *entire administrative record in this matter*, oral argument of counsel having been heard, and for the reasons set forth in the accompanying Memorandum, it is by the Court this 7th day of July, 1975

Ordered that defendant's Motion to Dismiss this action as to all plaintiffs except Shui Chong Kwan be, and the same hereby is, granted; and it is further

Ordered that plaintiff Shui Chong Kwan's cause is remanded to the Immigration and Naturalization Service for further proceedings consistent with this Memorandum and Order.

396 F.Supp. at 1253 (emphasis added).

11. "A person who is firmly resettled outside the country from which he fled is not eligible for the benefits of section 203(a)(7) of the Immigration and Nationality Act."
Letter of Officer in Charge to each applicant (Supp.Record, pp. 5, 14, 22, 31, 38).

12. It is well established that an appellate court may sustain a judgment which is considered correct for reasons other than those given by the trial court. *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1942). *Accord, Jaffke v. Dunham*, 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957); *accord, this circuit, Laughlin v. Eicher*, 79 U.S.App.D.C. 266, 145 F.2d 700 (1944), *cert. denied*, 325 U.S. 866, 65 S.Ct. 1403, 89 L.Ed. 1985 (1945). *See also, Kithcart v. Metropolitan Life Ins. Co.*, 150 F.2d 997 (8th Cir.), *cert. denied* 326 U.S. 777, 66 S.Ct. 267, 90 L.Ed. 470 (1945), where it was held that:

An appellate court may, when necessary or desirable, sustain a correct judgment on a different ground than that adopted by the trial court, where such ground is one that is within its power to formulate.

150 F.2d at 1001 (citations omitted). *Burlington Truck Lines v. United States*, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962), dealt with an *agency* decision and thus is not to the contrary. Here it is not only possible for us to formulate the ground for affirming the District Court's action, but we find that the ground was before the District Court, considered by it, and included as one basis for its order. 396 F.Supp. at 1253.

Nor is it necessary in these circumstances to remand the case to the District Court for entry of the same judgment but for different reasons. Affirmance and not remand is the appropriate procedure in such a case:

It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate.

*Securities and Exchange Commission v. Chenery Corp., supra*, 318 U.S. at 88, 63 S.Ct. at 459.

Finally, we note that the parties have argued the merits of appellants' claim to this court and, thus have explicitly recognized that this court may dispose of the appeal on that ground. The *parties* may also urge grounds for affirming a judgment not relied upon by the District Court. *California Bankers Ass'n v. Schultz*, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974).

13. *See* note 5 *supra.*

14. *Supra* note 3.

In *Rosenberg*, the Court was faced with an appeal from an INS decision in the United States denying refugee status to a Chinese national. The appellant Woo, fled communist China in 1953, lived in Hong Kong until 1960 and then moved to the United States upon receiving a temporary permit. When the permit expired the INS initiated deportation proceedings and Woo countered by applying for an immigrant visa claiming Seventh Preference rights as a refugee under section 1153(a)(7). The INS denied the application on the ground that to qualify an applicant's "physical presence in the United States [must be] a consequence of an alien's flight in search of refuge." 402 U.S. at 57, 91 S.Ct. at 1316. Woo successfully challenged this ruling in District Court which reversed [15] the INS.

The Ninth Circuit affirmed the District Court and stated that "[w]hether appellee has firmly resettled in Hong Kong is not . . . relevant." *Chien Woo v. Rosenberg*, 419 F.2d 252, 254 (9th Cir. 1969).

The Supreme Court, in reversing the Ninth Circuit and affirming the standard employed by the INS, provides particular guidance for deciding this case. The Court first found that the concept of resettlement was, contrary to the Ninth Circuit's view, essential to the inquiry Congress intended the INS to make in reviewing applications for refugee status.[16] Next, in what we consider to be dispositive of our case, the Court approved the standard employed by the INS in assessing whether Woo had resettled:

The District Director applied the *correct legal standard* when he determined that

---

**15.** Standing was never considered as an issue in the *Rosenberg* case. Accordingly, an inquiry into whether non-resident aliens who have never had contact with United States have standing in a suit such as this is not aided by *Rosenberg* where the disappointed applicant was actually present in the United States when he initiated the litigation. Presence inside the United States is crucial and has been recognized in the past, by this court, to bear heavily on the question of standing. In *Pesikoff v. Secretary of Labor*, 163 U.S.App.D.C. 197, 501 F.2d 757, *cert. denied*, 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974), we held that an American citizen who wished to employ an alien had standing to challenge a denial of a preference under § 1153. In so holding our opinion explicitly negated any inference that an alien who was physically outside the United States had standing:

> Inasmuch as we hold that Dr. Pesikoff, as the prospective employer of the alien . . . does have standing . . . it is not necessary for us to consider whether Ms. Quintero, as an alien outside the country, may also challenge denial of her certification.

163 U.S.App.D.C. at 199, 501 F.2d at 759. Similarly, the separate opinion, concurring in part and dissenting in part, noted:

> In view of the disposition I would make herein I do not find it necessary to determine whether appellant Quintero as a nonresident alien, has standing to bring this action.

163 U.S.App.D.C. at 205 n. 3, 501 F.2d at 765 n. 3.

Again, the notion that the existence or lack of standing may be affected by presence in the

United States, albeit illegal, is found in *Brownell v. Tom We Shung*, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956). There the Court noted, in holding that an alien *present at the borders of the United States* could challenge an exclusion order either by habeas corpus proceedings or by seeking a declaratory judgment (later limited by Congress to habeas corpus proceedings, 8 U.S.C. § 1105a(b)), that:

> We do not suggest, of course, that an alien who has never presented himself at the borders of this country may avail himself of the declaratory judgment action by bringing the action from abroad.

*Id.* at 184 n. 3, 77 S.Ct. at 255.

Consistent with our decision not to reach the standing issue in this case we mention this distinction, not to intimate our views on whether a non-resident alien has standing, but only to underscore that *Rosenberg*, aside from its silence on standing is clearly distinguishable from this case regarding standing and that as in *Pesikoff, supra*, the question remains open in this circuit.

**16.** The Court found, that while the language employed by Congress in the various Acts covering refugee immigration varied, that the concept of "firmly resettled" was still an integral part of the present statutory scheme. The Court concluded that:

> For substantially the reasons stated by the Second Circuit in *Shen v. Esperdy* [428 F.2d 293 (1970)] . . . we find no congressional intent to depart from the established concept of "firm resettlement" . . . .

402 U.S. at 54, 91 S.Ct. at 1315.

§ 203(a)(7) requires that "physical presence in the United States [be] a consequence of an alien's *flight* in search of refuge," and further that "the physical presence must be one which is *reasonably proximate to the flight and not one following a flight remote in point of time or interrupted by intervening residence in a third country reasonably constituting a termination of the original flight in search of refuge.*"

402 U.S. at 57, 91 S.Ct. at 1317 (footnote omitted, emphasis added).

This standard of physical presence proximate to flight outside the departed country, as explicitly adopted by the Supreme Court, clearly supports the basis that the Immigration officer gave for denying the instant applications. In looking to whether appellants have "firmly resettled," we find that the period of sixteen to twenty years between appellants' flight and their applications for refugee status convincingly demonstrates that appellants' applications are not "reasonably proximate to [their] flight," but rather are "remote in point of time" *and clearly* "interrupted by intervening residence in a third country." These facts support the finding of the Immigration officer that, on the record presented to him, appellants' applications indicated they were "firmly resettled," *i. e.,* not still in flight.[17]

■ The question of resettlement, however, is not always to be limited solely to an inquiry of how much time has elapsed between flight and application. We only hold that the Immigration officer was thoroughly correct in deciding on the facts of record as presented to him that the extended residence of appellants in Hong Kong, which far exceeded the minimal seven years upon which their Chinese resident status was based, is a sufficient basis for finding that appellants were no longer refugees in flight.[18]

---

**17.** Appellants and the INS argue over whether the District Director correctly applied the Hong Kong Ordinance of 1971 as a basis for denying their applications. Because we are affirming the INS in its determination that appellants were "firmly resettled" within the standards established by the Supreme Court in *Rosenberg v. Woo*, 402 U.S. 49, 91 S.Ct. 1312, 28 L.Ed.2d 592 (1971), we do not reach the parties' arguments concerning the Hong Kong rule beyond the following.

As we interpret the decision of the Immigration officer, he had a right to and he did decide on the evidentiary record before him that appellants' 16 to 20 years uninterrupted residence in Hong Kong, with the added assurance such residence acquired under the 1971 Ordinance, clearly justified a conclusion that they could continue to rely upon the firmness of their residence and hence were firmly resettled. The evidence they presented to the District Director showed that each of them met the Ordinance's requirement of seven consecutive years' residence in Hong Kong, "whether *legally or not*" (emphasis added), necessary in order to qualify for Chinese resident status and the Ordinance gave persons with such residential qualifications reasonable assurance that they would not be deported, *in the absence of any disqualifying showing in the record to the contrary.* He was therefore justified in holding that each applicant was to be considered "not eligible for the benefits of § 203(a)(7)," *supra.*

We accordingly affirm based on our conclusions from the facts of record that the decision of the Immigration officer was correct in finding, on this record, that appellants were firmly resettled, *i. e.,* not still in flight, because their applications are clearly "*remote in point of time [and] interrupted by intervening residence in a third country* reasonably constituting a termination of the original flight in search of refuge." *Rosenberg v. Woo*, 402 U.S. at 57, 91 S.Ct. at 1317 (emphasis added). This was what the District Director based his decision on when he referred to our law on firm resettlement.

**18.** Other factors besides time elapsed may be germane in deciding whether an applicant has "firmly resettled" so as to be eligible for refugee status. An applicant's family ties, intent, business or property connections and other matters may be relevant to resettlement determinations. To the extent that these were presented to the Immigration Officer they were insufficient to support a finding that any of the appellants were still in flight and not firmly resettled in Hong Kong. Resettlement is largely a factual question which, once that fact appears of record, the applicants bear the burden of overcoming. As we read the record which was before the INS official in this case, we conclude that he did not abuse the long-standing discretion accorded the INS in these matters in finding that applicants because of their

Our upholding the Immigration Officer in his finding that the periods of time appellants were resident in Hong Kong between their initial flight and application were sufficient to destroy any Seventh Preference refugee status is not a novel approach. Consideration of elapsed time is often the dominant if not crucial factor employed in assessing whether resettlement has occurred. *In Chi-Wai Lui v. Pilliod*, 358 F.Supp. 542 (N.D.Ill.1973), the court, in concluding that an INS denial of a preference visa should be upheld, stated:

> There is sufficient evidence that plaintiffs failed to meet the requirements established by Congress and implemented by the Service to qualify as refugees. It was reasonable of the Service to conclude from the length of Mr. and Mrs. Lui's residences in Hong Kong, fourteen and six years respectively, and from the other attendant circumstances as set out in the facts, that both plaintiffs had "firmly resettled" in Hong Kong . . .

*Id.* at 544. *Accord, Matter of Sun*, 12 I & N Dec. 36 (1966) (refugee preference visa denied when seventeen years had elapsed since applicant had fled his homeland). The periods of time here generally exceed those in these cases. *Cf. Matter of Chai*, 12 I & N Dec. 81 (1967) (presence of five years, as a student, in Hong Kong not sufficient to establish firm resettlement); *Matter of Moy*, 12 I & N Dec. 121 (1967) (presence in Hong Kong for less than one year does not constitute firm resettlement).

Here we do no more than the court in *Chi-Wai Lui v. Pilliod, supra,* a case markedly similar to this one, when it concluded that it was, pursuant to the Supreme Court's decision in *Rosenberg v. Woo, supra,* left to the discretion of the Immigration Service to determine what amount of long residence in Hong Kong did not qualify for Seventh Preference status as refugees still in flight.

> The scope of judicial review in cases of denial of preference visas is very narrow. We are limited to a determination as to whether the Attorney General has abused his discretion in denying the classification required for the preferential visa.

time of intervening residence in a third country is sufficient to terminate the applicant's flight.

\* \* \* \* \* \*

 . . . It was reasonable of the Service to conclude *from the length of Mr. and Mrs. Lui's residences in Hong Kong,* fourteen and six years respectively, and other attendant circumstances . . . that both plaintiffs had "firmly resettled" in Hong Kong . . . . Under these circumstances, we cannot say that there was an *abuse of discretion* in denying plaintiffs permanent residence in this country.

358 F.Supp. at 544–45 (emphasis added).

## IV

█ Appellants further contend they should be allowed conditional entry because they applied during 1971 and 1972 and had their applications been passed on before August 1, 1973, they would have been granted. In other words they complain that delay in the agency's processing of their applications caused theirs to be denied. In the absence of a showing that such delay was intentional or the result of gross negligence we do not consider such delay as a proper basis for granting applications that do not satisfy the statute as presently interpreted by the Supreme Court. There is no showing on this record that the time which transpired in the processing of these applications was unreasonable, given the extensive consideration that agency procedures required.

Nor do we find that the Immigration Officer was required further to explain the alleged change in INS practices around April 1, 1973. The references in the INS

*Pizarro v. Dist. Dir. of United States I. & N. Serv.*, 415 F.2d 481, 483 (9th Cir. 1969). *Accord, Nazareno v. Atty. Gen. of United States,* 366 F.Supp. 1219 (D.D.C.:1973), *aff'd,* 168 U.S. App.D.C. 22, 512 F.2d 936, *cert. denied,* 423 U.S. 832, 96 S.Ct. 53, 46 L.Ed.2d 49 (1975).

letter [19] to the "firmly resettled" standard of *Rosenberg*, decided April 21, 1971, and to the 1971 Hong Kong Ordinance which became effective April 1, 1972, were self-explanatory. The effect on the decision of these recent developments was also clearly stated. While a more precise explanation would have been helpful, it is sufficient that the recently reaffirmed "firmly resettled" requirement of *Rosenberg* required a denial of the applications and that was the basis stated for the decision.

## V

It is also significant that each appellant who considered "the denial of [his] application [to be] erroneous or . . . not [to] apply to [him] . . . " was notified that his "application may be considered further" if he notified the Immigration Office within 30 days "of the basis for [his] objection *supported* by any evidence and request[ed] that [he] be interviewed with respect to [his] application . . . "

This evoked letters from applicants' attorneys in Chicago, Illinois, requesting reconsideration of each denial and a hearing reiterating many of the claims raised here, calling attention to the "Statutory Declarations" that were filed, and stating that if their clients had been interviewed they were not aware of it.

Thereafter, it appears that two applicants (Lee and Yuen) appeared with their attorney and were interviewed. They each stated their date of entry into Hong Kong as 1951 and 1959, respectively, and stated they never made application to Hong Kong Immigration for "Chinese resident" classification.[20] In addition Lau sent a letter merely stating the circumstances which compelled him to leave China and restating his desire to gain entry to the United States. The record does not indicate that the other applicants took any additional action.

None of the material presented on these occasions was sufficient to overturn the prior conclusion that those three were firmly resettled in Hong Kong and hence were not refugees in flight entitled to Seventh Preference entry. Lee, Yuen and Lau had been residing in Hong Kong for 20 years, 21 years and 9 months, and 17 years and 10 months, respectively, and all the evidence they presented to the Immigration officer, both with their application and subsequently, proved their residence in Hong Kong for those periods of time, that they were firmly resettled in Hong Kong, and that they were not then refugees in flight from communism.

## VI

Finally, our decision is consonant with, if not bolstered by, 8 U.S.C. § 1153(d) which provides:

> Every immigrant shall be presumed to be a nonpreference immigrant until he establishes to the satisfaction of the consular officer and the immigration offices that he is entitled to a preference status.

This language makes clear that Congress intended that each immigrant should shoulder the burden of proving that he qualifies for a preference. This presumption was not overcome by the material presented to the Immigration Officer, nor was the burden met in view of the extended residence of appellants in Hong Kong before application. The "remoteness in point of time" of appellants' applications in this case establish that appellants are outside the standard of flight, and within the "firmly resettled" standard, as enunciated in *Rosenberg*. Those two elements had to be respectively proved or negated in order to qualify for a section 1153(a)(7) preference.

We therefore find that the INS District Director did not abuse his discretion in find-

---

19. *Supra* note 5.

20. Under the Ordinance, it was not necessary for them to apply to be a "Chinese resident" in order for them to enjoy that status.

ing that appellants were "firmly resettled" and not entitled to conditional entry as refugees. The District Court order dismissing appellants' suit is affirmed on this ground.[21]

*Judgment accordingly.*

FRANK A. KAUFMAN, District Judge, concurring specially:

### Standing

I am in agreement with Judge MacKinnon that "[p]rudential considerations" (p. —— of 185 U.S.App.D.C., p. 325 of 566 F.2d) should restrain us in this case from deciding the question of standing of the individual appellants, aliens who have never been in the United States, unless we need to do so. And I agree we need not do so. The District Court, however, granted appellee's motion to dismiss the complaint of the Chinese American Civic Council (Council) because of lack of standing of any of the appellants. Judge MacKinnon's opinion states agreement with the District Court concerning lack of standing of the Council. In so stating Judge MacKinnon affirmed the Court below which wrote:

The organizational plaintiff also lacks standing to sue. This is not a case where individual members of an organization have suffered or might suffer injury. *See Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The Chinese American Civic Council, although recognized by defendant as a sponsor for refugees and conditional entrants, has not alleged concrete injury to itself or to its members. Rather, the Council attempts to represent or stand in the shoes of the real parties in interest who themselves lack standing.

396 F.Supp. 1250, 1251–52 (D.D.C.1975).

In *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), Mr. Justice Powell, in the course of holding that several associations lacked standing, wrote that "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members * * * [provided that] [t]he association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Id.* at 511, 95 S.Ct. at 2211–2212. All of the individual appellants have suffered injury. The Council sponsors at least one of the individual appellants. It is seemingly recognized by the INS as a representative of applicants such as the individual appellants. "Where there is no effect on the organization itself, standing to represent the interests of its members has come most easily when an administrative agency itself has recognized the organization as a representative." 13 Wright, Miller and Cooper, *Federal Practice and Procedure* § 3531 at 213 (1975) (footnote omitted).

The issue of whether an association, operating and existing within the United States, has standing to represent its members or those whom it sponsors, when such persons are determined to be without standing solely because of lack of physical presence in the United States, has not been specifically

---

21. Counsel for appellants has argued that to deny appellants refugee status is harsh since most of the appellants have relatives in the United States. That refers to considerations which generally are not relevant to a determination of one's Seventh Preference rights. This opinion does not consider whether appellants might successfully attain other immigration preference categories or whether they are eligible for immediate relative status. While appellants are ineligible for refugee preference visas, we are not in any way passing upon the eligibility of any one of them to obtain entry into the United States under the statutory provisions specifically designed by Congress to alleviate those situations where an alien's family relationships warrant entry.

presented or determined herein. Accordingly, before I would affirm the judgment below on grounds of lack of standing of the Council, I would remand this case to the District Court for further consideration of that issue and for further testimony with regard to the role of the Council and its relationship with persons such as the individual appellants. But since I am in accord with Judge MacKinnon's conclusion on the substantive issue presented in this appeal, I agree that no remand is required.

### Merits

The District Court's observation that appellants "are confronted with an almost irrebuttable presumption that * * * they have 'firmly resettled' in Hong Kong and are no longer 'in search of refuge' " hits the nail on the head. 396 F.Supp. at 1251–52 n. 2. Appellants appear "firmly resettled" within the meaning of that term as explicated by Mr. Justice Black in *Rosenberg v. Yee Chien Woo*, 402 U.S. 49, 91 S.Ct. 1312, 28 L.Ed.2d 592 (1971). Therein, he wrote of the " 'resettlement' concept":

> [I]t is not irrelevant. It is one of the factors which the Immigration and Naturalization Service must take into account to determine whether a refugee seeks asylum in this country as a consequence of his flight to avoid persecution. The District Director applied the correct legal standard when he determined that § 203(a)(7) requires that "physical presence in the United States [be] a consequence of an alien's flight in search of refuge," and further that "the physical presence must be one which is reasonably proximate to the flight and not one following a flight remote in point of time or interrupted by intervening residence in a third country reasonably constituting a termination of the original flight in search of refuge."

*Id.* at 56, 91 S.Ct. at 1316–1317 (footnote omitted).

The denial letter [1] does erroneously apply the Hong Kong Ordinance [2] The letter seemingly also does not correctly apply the *Rosenberg* doctrine because it appears to assume that long residence creates an *irrebuttable* presumption of "firmly resettled". But the letter nevertheless does basically rest upon that doctrine as the core reason for its negative decision. "The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). *See also Burlington Truck Lines v. United States*, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962). Still, there is "some play in the joints" of that doctrine. K. Davis, Administrative Law Treatise § 16.12 at 581 (1970 Supp.), discussing, in a slightly different context, the effect of *Penn-Central Merger* and *N & W Inclusion Cases*, 389 U.S. 486, 88 S.Ct. 602, 19 L.Ed.2d 723 (1968), upon the *Chenery* principle. That "play" in this case eliminates the need for reversal because of any violation of the *Chenery* principle, particularly since the individual appellants were given the chance to rebut the effects of their long residences in Hong Kong and to present other facts relevant under the *Rosenberg* test. Judge MacKinnon (pp. —— —— of 185 U.S.App.D.C., p. 330 of 566 F.2d) has carefully reviewed the opportunity given to each of the individual appellants *after* the denial letter was sent to them and their failure to present any data which, under the *Rosenberg* "firmly resettled" test, would have permitted an administrative determination other than a negative one. Thus, not only were the appellants dealt with fairly, but the total administrative action embodied in the combination of the denial letter, the post-letter opportunities afforded to appellants, and appellants' failures to rebut the effect of their respective lengthy Hong Kong residences adds up to (a) fair procedure and (b) correct and indeed compelled substantive

---

1. *See* n.5 in Judge MacKinnon's opinion.

2. The District Court has commented succinctly on the administrative error in that regard. 396 F.Supp. at 1252–53.

application of *Rosenberg.* Thus, in this case, a strict application of the *Chenery* doctrine is not called for.

I concur in the affirmance of the judgment of the District Court.